Gross, and others, Plaintiffs-Appellants, v. Joecks, and others, Defendants: Dairyland Insurance Company, Defendant-Respondent.

Gross, and others, Plaintiffs-Respondents, v. Joecks, and another, Defendants: Rural Mutual Insurance Company, Defendant-Appellant.

*No. 705 (1974). Submitted on briefs April 12, 1976.—Decided May 14, 1976.*
(Also reported in 241 N. W. 2d 727.)

For the appellants the cause was submitted on the briefs of *Fricker & Bailey* of Milwaukee.

For the respondent the cause was submitted on the brief of *Alan Lee Derzon, Thomas C. Dunst* and *S. Raymond Spitz*, all of Milwaukee; for Rural Mutual Insurance Company there was a brief by *Patrick T. Sheedy* of Milwaukee.

BEILFUSS, J.   The action in this case was commenced by the plaintiff-appellant, Michael Gross, to recover for his personal injuries suffered in a collision between the motorcycle he was riding and an automobile on March 11, 1973 in the city of Milwaukee.   At the time of the collision, the 1967 Ford automobile involved was being driven by 18-year-old Ronald Joecks with the express permission of his friend, 17-year-old Richard Boyd.   The automobile was registered in the name of Richard's father, Donald Boyd, with whom Richard lived.

Prior to the accident, the following insurance policies had been issued:

(1) Dairyland Insurance Company (hereinafter Dairyland) had issued a policy of liability insurance to Ronald Joecks insuring him against any liability arising out of the negligent operation or use of any nonowned automobile while being operated by him, provided that his actual operation was ". . . with the permission of the owner and is within the scope of such permission. . . ."

(2) Rural Mutual Insurance Company (hereinafter Rural Mutual) had issued two policies of liability insurance to Roger Joecks, the father of Ronald, and with whom Ronald lived.   These policies insured Roger Joecks and any relative of his who was a resident in the same household operating any nonowned automobile provided that the actual operation of it was with the permission ". . . or reasonably believed to be with the permission of the owner. . . ."

(3) Milwaukee Mutual Insurance Company (hereinafter Milwaukee Mutual) had issued a policy of liability insurance to Donald Boyd, father of Richard, insuring himself or anyone operating his motor vehicle with permission, against the liability arising out of the negligent operation or use of such automobile.   The coverage of Milwaukee Mutual's policy is not involved on this appeal.

A trial to the court was held on the question of the coverage of the policies provided by Dairyland and Rural Mutual. The issue at the coverage trial was whether Ronald Joecks was operating the automobile at the time of the accident with the permission of the owner so as to bring him within the policy provisions of Dairyland and Rural Mutual's policies.

Prior to the commencement of the coverage trial, the attorney representing Rural Mutual stipulated with the attorney representing the plaintiff that the court's determination on the question of permissive use would be binding on all the defendants, including Rural Mutual and Dairyland.

The testimony presented at the trial in the coverage issue established that on March 11, 1973, Donald Boyd was the owner of record of the 1967 Ford automobile which he had purchased approximately one year before. The car had been purchased primarily for the use of his son, Richard, and incidentally, for use as a loaner vehicle in Donald Boyd's service station business. Donald Boyd testified that his son, Richard, had permission to use the automobile at any time and for any purpose he (Richard) deemed reasonable. Richard could drive the car wherever he wanted to go at any time subject only to the possible use in the filling station.

Richard drove the car to school, to work, on social engagements, and wherever he wanted. Donald testified that Richard considered it to be his own car, which did not bother Donald as long as he had it when he needed it in his service station business. Donald further testified that he doubted that his son had loaned the car out to customers at the service station any more than one time, although the car was frequently used by employees of the station to pick up parts.

According to Donald, he had told his son when they purchased the car that he should not let anyone else

use it. Specifically, he testified he said to his son, ". . . Use your car yourself." Donald acknowledged that he had, after the accident in this case, executed an affidavit of no permission wherein he stated that Ronald Joecks did not have his permission to operate the automobile at the time of the accident and that his son, Richard, had previously been informed that no one else was to operate the car.

Richard Boyd also testified at the trial on the coverage issue, and stated that on the day of the accident, he had met Ronald Joecks, whom he had known for some time, at church. Ronald later drove his own car over to the Boyd house and the two young men decided to go to a playground to play basketball. They took the 1967 Ford to the playground where they met some other friends who wanted to go to a nearby shopping center. Richard Boyd testified that he wanted to go with his friends but Ronald Joecks had to go home. According to Richard, he decided to let Ronald use the 1967 Ford to go back to the Boyd house to pick up Ronald's own car while Richard went on to the shopping center with his friends. Richard gave Ronald the keys and Ronald drove off. It was on his way to the Boyd house that the collision with the plaintiff on the motorcycle occurred.

Richard Boyd also testified that he had had general permission to use the automobile ever since it had been purchased and stated that he used it to go back and forth to school, to work, out on social engagements, and to church. He stated that he did not recall ever loaning the car out to others and did not remember any conversation with his father in which he was told not to loan the car out to anybody.

Also testifying at the coverage trial was the defendant, Ronald Joecks, who acknowledged that he had not been given permission by Richard's father to drive the 1967 Ford. Joecks further testified that although he had never

seen the title to the car, he thought the owner of the car was his friend, Richard. He stated that he had seen Richard use the car on numerous occasions and had never seen him ask permission from his father to use it. Ronald Joecks further testified that although he had never driven this car before, Richard had given him permission to do so on the day of the accident.

The trial court after hearing the testimony and placing great reliance on the affidavit of no permission filed by Donald Boyd, rendered an oral decision concluding that Dairyland's policy afforded no coverage to Ronald Joecks at the time of the accident because he did not have the permission of Donald Boyd to operate the 1967 Ford. In this oral decision, the trial court also granted Rural Mutual's motion to dismiss the action as to it based on the stipulation previously entered into by its attorney and the plaintiff's attorney to the effect that the determination on the coverage issue would apply to all defendants.

Subsequently, the trial court granted the plaintiff's motion made pursuant to sec. 269.46 (3), Stats., to set aside the stipulation and previous order of dismissal as to Rural Mutual on the ground that the plaintiff's attorney made a "stupid mistake." The mistake was agreeing to the stipulation and concluding that the Rural Mutual policy and the Dairyland policy were the same with respect to the issue of permissive use of a nonowned automobile, when actually Rural Mutual's policy language is more lenient requiring only that the insured "reasonably believes" that he has permission of the owner to drive the vehicle in order for coverage to be provided.

The trial court also ordered formal findings of fact and conclusions of law and judgment based thereon dismissing the action against Dairyland on the basis that that policy failed to provide coverage to Ronald Joecks.

The plaintiff now appeals from the judgment dismissing his action against Dairyland. Rural Mutual, by

separate notice of appeal, appeals from the order entered granting a new trial on the coverage question to the plaintiff.

## Dairyland's Coverage

The first question presented by the plaintiff's appeal from the judgment dismissing the action against Dairyland is whether it makes any difference that here we are considering the concept of permission under the required "any motor vehicle" coverage of sec. 344.33 (2), Stats., as opposed to the concept of permission as utilized in the omnibus statute in sec. 204.30 (3).

In *Foryan v. Firemen's Fund Ins. Co.* (1965), 27 Wis. 2d 133, 133 N. W. 2d 724, this court noted a possible distinction between the omnibus coverage and the extended or additional insurance afforded by the family coverage permitted under sec. 344.33 (7), Stats., which is now found in sec. 344.33 (6). In that case, we stated at pages 141, 142:

"The omnibus insurance protection required by sec. 204.30 (3), Stats., follows the *vehicle* insured. The extended or additional insurance afforded by the family coverage of the use of nonowned automobiles, permitted but not required by statute, follows the *driver* insured.

"Omnibus coverage insurance (wherein the *car* rather than the *driver* is covered) is, in part at least, for the benefit of the injured party, *Pavelski v. Roginski* (1957), 1 Wis. 2d 345, 84 N. W. 2d 84; the purpose thereof is to increase, rather than restrict, coverage. *Groth v. Farmers Mut. Automobile Ins. Co.* (1963), 21 Wis. 2d 655, 124 N. W. 2d 606; and, this court is committed to a broad or liberal construction of 'permission' as used in the omnibus clauses, required to be included in automobile liability policies. Sec. 204.30 (3), Stats. *Krebsbach v. Miller* (1963), 22 Wis. 2d 171, 125 N. W. 2d 408.

"Counsel for the parties have not attempted to discuss the difference in the concept of implied permission, if there be one, between the required omnibus policy pro-

vision and permissible extended family coverage while operating nonowned vehicles. Query—is implied permission to be viewed from the point of view of the driver of the car or the owner? We regret that this case will be sent back for trial without more explicit guidelines as to the question of implied permission as it applies to family coverage of nonowned automobiles, but we deem it desirable to do so for the reason that this issue has not been specifically raised nor presented on the appeal before us."

It is this last quoted portion of the *Foryan Case* that gives rise to the question presented now regarding the permissive use of the 1967 Ford, and whether such permission is viewed differently under the "any motor vehicle" coverage required by sec. 344.33 (2), Stats., as opposed to the omnibus coverage of sec. 204.30 (3). If the considerations are the same, then two recent decisions of this court dealing with the question of permissive use under the omnibus clause of the insurance policy would apply. *See: Nordahl v. Peterson* (1975), 68 Wis. 2d 538, 229 N. W. 2d 682; and *Upton v. Tatro* (1975), 68 Wis. 2d 562, 229 N. W. 2d 691.

We conclude the concept of permissive use is to be viewed the same regardless of whether the question arises under the "any motor vehicle" coverage of sec. 344.33 (2), Stats., or the omnibus coverage under sec. 204.30 (3). The key factor is that both "any motor vehicle" coverage and omnibus coverage are required by statute, with the former being required by the financial responsibility law and the latter by the omnibus statute. The purpose of the financial responsibility laws found in secs. 344.24 to 344.41, is to provide a method of compensating for damages that may result from future accidents caused by negligence of the operator as a condition for reissuing a license previously revoked. For such driver to obtain his license again, he must file proof of financial responsibility. One way of doing so is to

obtain a liability policy containing the required provisions as set out in sec. 344.33. One of such required provisions is that the policy provide for "any motor vehicle" coverage which shall insure the person named in the policy while operating any motor vehicle with the express or implied permission of the owner. This type of coverage, when financial responsibility must be filed, is required as is the omnibus coverage required generally. On the other hand, the extended family coverage the court was concerned with in *Foryan* is a permissible rather than required part of the policy.

Also, the financial responsibility law has as its purpose the protection of members of the public who are injured as the result of the negligence of a financially irresponsible motorist. This is similar to the stated purpose of the omnibus coverage which, according to *Foryan,* is for the benefit of the injured party.

We conclude the distinction noted in *Foryan* between the permissible extended family coverage and the omnibus coverage is not to be drawn when considering the required "any motor vehicle" coverage of sec. 344.33 (2), Stats. The concept of permissive use under the latter statute is no different than that concept under the omnibus statute. Thus, the cases dealing with the omnibus statute apply with equal force to the instant Dairyland policy containing the required "any motor vehicle" coverage even though the former type of protection follows the vehicle and the latter follows the driver insured, and even though Ronald Joecks was not required to file proof of financial responsibility.

In the two recent cases, *Nordahl* and *Upton, supra,* this court exhaustively reviewed prior cases and authorities under the omnibus statute on the question of whether the permission of the record owner of an automobile may be implied under certain circumstances for the purpose of extending insurance coverage to the driver of the

vehicle at the time of the accident. In the *Upton Case,* this court stated at pages 572 to 573:

"In the case of *Nordahl v. Peterson, supra,* this court has held that where the minor is the true owner of the automobile and title and insurance are held in the name of the adult as a matter of convenience or economy, whether or not the adult has forbidden the minor to allow others to drive the minor's vehicle is immaterial and the permission of the named insured is implied as a matter of law. In *Nordahl* we quoted the language in *Krebsbach v. Miller* . . . .

" 'Also, where for all practical purposes the first permittee is the real owner of the car but title has been taken in the name of the named insured for reasons of convenience, the general control and custody of the first permittee is such that, when he grants permission to a third person to operate the insured vehicle, such operation is held to be with the implied permission of the named insured.'

"We have specifically withdrawn the implication in *Foote v. Douglas County* (1966), 29 Wis. 2d 602, 139 N. W. 2d 628, which quoted this language from *Krebsbach* with approval but stated that whether there was permission from the titleholder and named insured to the actual minor-owner for permission to let others use the car was an issue of fact for the jury.

"We hold that under the fact situation in this case where, for all practical purposes, the first permittee, Harold Ahlers, is the real owner of the car, exercising ownership control over the vehicle and where title to the car and insurance has been taken in the name of the father as a matter of convenience or economy, when the son loaned the vehicle to another the father's consent is presumed as a matter of law. . . ."

The rationale of those cases as applied to the instant fact situation requires a reversal of the judgment dismissing Dairyland from the case. Under the circumstances of this case, the trial court was required to find as a matter of law that Ronald Joecks' use of the 1967 Ford was with the permission of the record owner,

Donald Boyd, so as to extend Dairyland's policy coverage to Joecks in the operation of this vehicle. This is true because Ronald Joecks had the express permission of Richard Boyd, who for all practical purposes, was the real owner of the automobile. For that reason, regardless of whether Donald Boyd prohibited his son from loaning the car to others, as a matter of law Ronald Joecks had his permission and therefore Dairyland's policy applied. The judgment entered dismissing the complaint as to Dairyland must be reversed.

### Rural Mutual's Appeal from Order Granting New Trial

The policy issued by Rural Mutual to Roger Joecks, father of Ronald, and with whom Ronald lived, contained the extended family coverage which would provide coverage to Ronald if he was operating a nonowned vehicle with the permission or reasonably believed he had the permission of the owner of the vehicle. Rural Mutual now appeals from an order granting a new trial and setting aside a stipulation which in essence provided that the result reached on the question of coverage under the Dairyland policy would govern the question of coverage under Rural Mutual's policy. It is not clear what Rural Mutual's position would be regarding the binding effect of the stipulation now that we reverse the judgment as to Dairyland with directions to find permission and therefore coverage under that policy as a matter of law. Presumably, Rural Mutual would not want such a result applied to it and would now welcome a new trial on the issue of its policy's coverage.

We do not apply the same result reached with respect to Dairyland's policy to the Rural Mutual policy since the latter's policy provided for the permissible, rather than

required, extended family coverage. Thus, the query raised in *Foryan, supra,* is again presented. As in *Foryan,* we must send this case back for trial on the question of implied permission as it applies to family coverage of nonowned automobiles without explicit guidelines since again this issue has not been specifically raised by the parties on this appeal.

*By the Court.*—The judgment dismissing the action against Dairyland Insurance Company is reversed. The order granting a new trial on the question of the coverage provided by the policy of Rural Mutual Insurance Company is affirmed, and the cause is remanded for further proceedings not inconsistent with this opinion.