Karen J. CARDINAL, Plaintiff,

v.

LEADER NATIONAL INSURANCE CO., Defendant-Appellant,

AMERICAN & FOREIGN INSURANCE CO., a/k/a Royal Insurance Company of America, Defendant-Respondent-Petitioner,

Julia A. POST, Alphonse Post, Paul A. Wilson and Milwaukee Mutual Insurance Company, Defendants.

Supreme Court

*No. 89–1271. Oral argument October 3, 1991.—Decided February 13, 1992.*

(Also reported in 480 N.W.2d 1.)

For the defendant-respondent-petitioner there were briefs by *John J. Albert* and *Albert, Jude, Shuman & Simanek, S.C.*, Racine and oral argument by *John J. Albert*.

For the defendant-appellant there was a brief by *Philip C. Reid* and *Cook & Franke, S.C.*, Milwaukee and oral argument by *Mr. Reid*.

DAY, J. This is a review of a published decision of the court of appeals[1] reversing a judgment of the Circuit Court for Racine County, Honorable Emmanuel Vuvunas, judge, which held that a "non-owner" motor vehicle insurance policy covered "permissive drivers" of the insured's vehicles. We affirm the court of appeals.

There are four issues in this case. First, whether Paul Wilson's insurance policy insured Paul Wilson's vehicles and therefore Julia Post under the policy's per-

---

[1]*Cardinal v. Leader Nat. Ins. Co.*, 158 Wis. 2d 147, 461 N.W.2d 799 (Ct. App. 1990).

missive user section. We hold it does not. Second, whether the financial responsibility statutes, sec. 344.24, *et seq.,* Stats., 1989–90, mandate that insurance provided under the statutes insure the vehicles owned by the named insured. We hold it does not. Third, whether the SR–22 form, which certified Paul Wilson's compliance with the financial responsibility statutes, expanded the coverage of Paul Wilson's policy to insure vehicles he owned. We hold it does not. Fourth, whether the omnibus statutes, sec. 632.32, *et seq.,* Stats., 1989–90, which mandate that vehicle insurance cover permissive users of insured vehicles, create liability coverage for Julia Post. We hold it does not.

On March 30, 1986, Karen Cardinal (Cardinal) was involved in an automobile accident and sustained serious injuries. The automobile she was driving was struck by a van driven by Julia Post (Post) who allegedly drove through a stop sign. Paul Wilson (Wilson), the owner of the van, gave Post permission to drive the van. Prior to the accident, in February, 1985, Leader National Insurance Company issued a "non-owner" automobile insurance policy to Paul Wilson. Such policy was in effect at the time of the accident.

Cardinal filed personal injury claims against Milwaukee Mutual Insurance Company (Milwaukee Mutual), Post's insurer; American & Foreign Insurance Company a/k/a Royal Insurance Company (Royal), Cardinal's uninsured-underinsured insurer; and Leader National Insurance Company (Leader), Wilson's insurer. Cardinal's claim against Milwaukee Mutual was severed from her other claims and tried separately. Cardinal's claim against Royal was settled and Cardinal was dismissed from the lawsuit. By subrogation and assignment, Royal replaces Cardinal and pursues the claim

against Leader. Royal and Leader are the only parties before this court.

In Wisconsin, drivers whose licenses have been revoked because of their poor driving records are required to show proof of financial responsibility to have their operators licenses reinstated under sec. 344.24, *et seq.*, Stats., 1989–90, the financial responsibility statutes. This requirement can be fulfilled by obtaining liability insurance with the coverage specified in sec. 344.33, Stats., 1989–90,[2] and by certifying such coverage under sec. 344.31, Stats., 1989–90.[3]

To comply with the financial responsibility statutes, Wilson applied for and purchased automobile liability insurance from Leader. Leader certified that Wilson was

---

[2] **344.33 "Motor Vehicle liability policy" defined. (1)** Certification. In this chapter, "motor vehicle" liability policy" means a motor vehicle policy of liability insurance, certified as provided in s. 344.31 or 344.32 as proof of financial responsibility for the future, and issued, except as otherwise provided in s. 344.32, by an insurer authorized to do an automobile liability business in this state to or for the benefit of the person named in the policy as the insured.

**(2)** Motor vehicle liability policy. A motor vehicle policy of liability insurance shall insure the person named therein using any motor vehicle with the express or implied permission of the owner, against loss from the liability imposed by law for damages arising out of the maintenance or use of the motor vehicle within the United States of America . . ..

[3] **344.31 Certification of insurance as proof.** Proof of financial responsibility for the future may be furnished by filing with the secretary the written certification of any insurer duly authorized to do business in this state that there is in effect a motor vehicle liability policy for the benefit of the person required to furnish proof of financial responsibility or by transmitting such certification to the secretary by another means approved by the secretary. Such certification shall give the effective date of such motor vehicle liability policy, which date shall be the same as the effective date of the certification and shall certify coverage for any motor vehicle operated by the named insured.

financially responsible by completing and filing an SR–22 form with the Department of Transportation.

The first issue is, did Paul Wilson's insurance policy insure the vehicles Wilson owned and therefore Julia Post under the policy's permissive user section? Royal argues the policy is ambiguous and should be construed to cover Julia Post. The construction of an insurance contract is a question of law which we review *de novo.* *Kaun v. Industrial Fire & Cas.* 148 Wis. 2d 662, 667, 436 N.W.2d 321 (1989). Ambiguities in an insurance contract should be construed in favor of coverage. *Smith v. Atlantic Mut. Ins. Co.,* 155 Wis. 2d 808, 811, 456 N.W.2d 597 (1990); *D'Angelo v. Cornell Paperboard Products Co.,* 59 Wis. 2d 46, 49, 207 N.W.2d 846 (1973); *Kopp v. Home Mut. Ins. Co.,* 6 Wis. 2d 53, 57, 94 N.W.2d 224 (1959). Exclusions are to be narrowly construed against the insurer, especially if they are uncertain as to effect. *Smith,* 155 Wis. 2d at 811; *Meiser v. Aetna Casualty & Surety Co.,* 8 Wis. 2d 233, 238, 98 N.W.2d 919 (1959).

The financial responsibility statutes provide what constitutes the insurance policy:

> The policy, the written application therefor, if any, and any rider or endorsement which does not conflict with the provisions of this chapter constitutes the entire contract between the parties.

Section 344.33(2)(d), Stats., 1989–90.

On the application form used by Leader, spaces were provided for the description of owned vehicles. No vehicles were described, rather, lines were drawn through the spaces. The Leader policy also contained a declarations page which provided spaces for the description of vehicles. Again, no vehicles were described.

The policy's "Cars We Insure" section states that the policy only insures cars "described on the declarations page."[4] The "Protection For Others" section states that permissive users are insured only when using cars "described on the declarations page."[5]

The Leader insurance policy is not ambiguous. "An ambiguity exists when the policy is reasonably susceptible to more than one construction from the viewpoint of a reasonable person of ordinary intelligence in the position of the insured." *Schroeder v. Blue Cross & Blue Shield*, 153 Wis. 2d 165, 174, 450 N.W.2d 470 (Ct. App. 1989); *Cieslewicz v. Mut. Service Cas. Ins. Co.*, 84 Wis. 2d 91, 97–98, 267 N.W.2d 595 (1978). Given the clear language of the policy, a reasonable person could only interpret the policy in one way, as insuring only those vehicles described on the declarations page. Since no vehicles were described on either the application or the declarations page, a reasonable person would believe that no vehicles were insured.

This conclusion is bolstered by the equally unambiguous policy endorsement. The endorsement is a one page attachment to the policy clearly stating the policy is a "non-owner" policy insuring "you and your spouse"

---

[4] CARS WE INSURE

We insure any *car* described on the declarations page and any *car you* replace it with. We'll also insure any additional *car you* acquire if we insure, under this insurance, all *cars you* own. But the replacement or addition is insured only if *you* notify us within 30 days of its acquisition.

[5] PROTECTION FOR OTHERS

Anyone using, with *your* permission, a *car* described on the declarations page, or any additional, replacement or substitute *car,* has the same rights and obligations that *you* have under this insurance.

but not "any automobile owned by you . . .."[6]

Taken together, the lack of vehicles described on the application or the declarations page and the unambiguous language of the endorsement clearly reveal that the policy does not insure vehicles. Therefore, Julia Post is not covered as a permissive user since that section applies only where the permissive user operates a vehicle described within the policy.

In addition, the "Financial Responsibility Laws" section of the policy does not create coverage for Julia Post. The relevant portion states: "When we certify this policy as proof [of financial responsibility], all the terms and conditions of this insurance will be amended to com-

---

[6]The endorsement states in relevant part:

### NON-OWNER POLICY

It is agreed that the insurance coverage of the policy for bodily injury liability, property damage liability and automobile medical payments applies to the use of any automobile, but is limited as follows:

1. INSURED PERSON:

a. You and your spouse if a resident of the same household

b. Any other person or organization not owning or hiring the automobile, but only for his or its' liability because of acts or omissions of an insured under (a) above.

2. THERE IS NO COVERAGE FOR:

a. Any automobile owned by you or any member of the same household. This does not apply to any protection under the medical payments coverage of this policy.

b. Any business use unless the automobile is occupied or operated by an insured person.

c. Any operation or use in connection with an automobile sales agency, repair shop, service station, storage garage, or public parking space.

ply with the requirements of such law." Since we hold that the financial responsibility statutes mandate that persons, not their vehicles, are insured, the policy, which clearly insures Paul Wilson, not his vehicles, complies with the statute. Therefore, no policy amendment is necessary.[7]

Thus, under the terms of the policy, Paul Wilson was insured while operating any vehicle, regardless of whether he owns the vehicle. The vehicle itself is not insured. While Julia Post was a permissive driver of Paul Wilson's van, such van was not an insured vehicle, and therefore Julia Post was not insured.[8]

---

[7]At oral argument, counsel for Leader acknowledged that, under the terms of the policy, the policy insured the named insured, Paul Wilson, and "if he had a resident spouse [which he did not] it would have provided coverage for that spouse as well." In addition, counsel for Leader conceded that Paul Wilson would be insured while driving his owned vehicles notwithstanding the endorsement's language that "[t]here is no coverage for any automobile owned by you . . ." since, counsel stated, the financial responsibility laws require that "bad drivers had to be insured operating an owned or non-owned vehicle," and since the policy provides that it incorporates the financial responsibility laws and will be amended to comply therewith.

[8]The parties disagree as to whether Paul Wilson informed the Leader agent that he owned several vehicles when he applied for insurance. However, the parties waived this issue since it was not raised at the circuit court as both Royal and Leader stipulated that:

> Defendant Leader National's coverage issue does not involve any factual disputes and can be resolved by the court as a matter of law . . .. That all remaining issues on Leader's coverage are legal and require the Court's interpretation of the Leader policy, the impact of the SR–22 filing, and the construction of state statutes.

385

The second issue is, do the financial responsibility statutes mandate that insurance provided thereunder insure the vehicles owned by the named insured? Royal argues that the financial responsibility statutes require an insured, who owns vehicles, to have vehicle insurance before operating privileges will be reinstated. Statutory interpretation is a question of law which this court reviews *de novo*. This court does not defer to the determination of either the court of appeals or the circuit court. *City of Madison v. Donohoo*, 118 Wis. 2d 646, 651, 348 N.W.2d 170 (1984).

Prior to its amendment in 1973, the financial responsibility statutes distinguished between "owner's" and "operator's" policies when defining "motor vehicle policy."[9] In addition, the certification provision of the pre-1973 statute stated:

> Proof of financial responsibility for the future may be furnished by filing with the administrator the written certificate of any insurance carrier . . .. Such certificate . . . *shall designate by explicit description or by appropriate reference all motor vehicles covered thereby,* unless the policy is issued to a person who is not the owner of a motor vehicle.

---

[9] 344.33 "Motor vehicle liability policy" defined.

. . ..

(2) Owner's policy. An owner's policy of liability insurance:

(a) Shall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted . . ..

(3) Operator's policy. An operator's policy of liability insurance shall insure the person named as insured therein against loss from the liability imposed upon him by law for damages arising out of the use by him of any motor vehicle not owned by him . . ..

Section 344.33(2) and (3), Stats., 1971–72.

Section 344.31, Stats., 1971–72 (emphasis added).

The intent of the pre-1973 financial responsibility statutes clearly was to require a person subject to the financial responsibility statutes to insure the vehicles he or she owned. *See Van Erem v. Dairyland Mut. Ins. Co.,* 5 Wis. 2d 450, 556–57, 93 N.W.2d 511 (1958).

However, the amended statutes abandon the distinction between an "owner's policy" and an "operator's policy," and delete the language requiring vehicle insurance for owned vehicles. In so doing, the amended statute creates an ambiguity. "Ambiguity can be created by the interaction of two separate, but related statutes." *Van Cleve v. Hemminger,* 141 Wis. 2d 543, 547–48, 415 N.W.2d 571 (Ct. App. 1987).

The amended certification statute suggests it is the vehicle, not the person, which must be covered:

> Proof of financial responsibility for the future may be furnished by filing with the secretary the written certification of any insurer . . .. Such certification . . . shall certify *coverage for any motor vehicle* operated by the named insured.

Section 344.31, Stats., 1989–90 (emphasis added).[10]

---

[10] **344.31 Certification of insurance as proof.** Proof of financial responsibility for the future may be furnished by filing with the secretary the written certification of any insurer duly authorized to do business in this state that there is in effect a motor vehicle liability policy for the benefit of the person required to furnish proof of financial responsibility or by transmitting such certification to the secretary by another means approved by the secretary. Such certification shall give the effective date of such motor vehicle liability policy, which date shall be the same as the effective date of the certification and *shall certify coverage for any motor vehicle* operated by the named insured.

Section 344.31, Stats., 1989-90 (emphasis added).

387

The amended definitions statute states it is the person, not the vehicle, which must be covered:

> 344.33(2) Motor vehicle liability policy. A motor vehicle policy of liability insurance *shall insure the person named therein* using any motor vehicle with the express or implied permission of the owner . . ..

Section 344.33(2), Stats., 1989–90 (emphasis added).[11]

For the reasons set forth below, we hold the financial responsibility statutes to mandate insurance on the person, not on the vehicles such person may own.

First, the nature and language of the amendments to the statutes are significant. The omission of a word or words in the revision of a statute indicates an intent to alter its meaning. *Pittman v. Lieffring,* 59 Wis. 2d 52, 64, 207 N.W.2d 610 (1973). If a statute is ambiguous, it is permissible to look to the legislative intent. *Ellingson v. ILHR Department,* 95 Wis. 2d 710, 713–14, 291 N.W.2d 649 (Ct. App. 1980). We look to the language, scope, history, context, subject matter and object intended to be accomplished by the statute to determine the legislative intent. *State v. Pham,* 137 Wis. 2d 31, 34, 403 N.W.2d 35 (1987).

Unlike its predecessor statute, the amended certification statute, sec. 344.31, Stats., 1989–90 makes no ref-

---

[11] 344.33 "Motor vehicle liability policy" defined.

. . ..

**(2)** Motor vehicle liability policy. A motor vehicle policy of liability insurance *shall insure the person named therein* using any motor vehicle with the express or implied permission of the owner, against loss from the liability imposed by law for damages arising out of the maintenance or use of the motor vehicle within the United States of America or the Dominion of Canada . . ..

Section 344.33(2), Stats., 1989–90 (emphasis added).

erence to "owner[s]," rather, it mandates coverage for vehicles "operated" by the named insured. The result of abandoning "ownership" language and inserting "operating" language is to create liability coverage for the person, not the vehicle that person operates. The focus of the certification changed from the vehicle to the person. The intent of the legislature that coverage follow the person was recognized in *Gross v. Joecks,* 72 Wis. 2d 583, 590, 241 N.W.2d 727 (1976), where this court stated that, whereas coverage under the omnibus statute "follows the vehicle," coverage under the financial responsibility statute "follows the driver."

Additionally, unlike its predecessor statute, the amended definition statute, sec. 344.33, Stats., 1989-90 does not distinguish between owner's and operator's policies. The amendments abandon that distinction and now specifically require the person to be insured: "A motor vehicle policy of liability insurance shall insure the person named therein using any motor vehicle with the express or implied permission of the owner . . .." Section 344.33(2), Stats., 1989-90.

The changes in the penalties for failing to maintain proof of financial responsibility are also significant. Prior to the 1973 amendment, the penalty for failing to maintain proof of financial responsibility was revocation of the person's operating privileges and registration.[12] The amended statute only revokes the person's operating

---

[12] **344.40 Suspension for failure to maintain proof; other proof may be required. (1)** Whenever any person who has furnished proof of financial responsibility fails to maintain such proof at any time during the period when proof of financial responsibility is required, the administrator shall revoke such person's operating privilege and registration . . ..

Section 344.40(1), Stats., 1971-72.

privilege.[13] Again, the change focuses on the person, not on his or her vehicle.

Second, to read the amended certification statute as mandating vehicle insurance would yield an absurd result. We cannot interpret a statute in such a way as to lead to an absurd or unreasonable result. *Pham,* 137 Wis. 2d at 34. We agree with the court of appeals, "[i]t would be unreasonable to believe that the legislature intends insurance to operate like a contagious disease, attaching itself to any vehicle operated by a driver who has non-owner's insurance." *Cardinal,* 158 Wis. 2d at 155.

Third, holding that the financial responsibility statutes mandate insured persons, not insured vehicles, furthers the purpose of the statutes. The purpose of the financial responsibility statutes is to provide a method of compensating for damages that may result from future accidents caused by negligence of the operator with a poor driving record. *Gross,* 72 Wis. 2d at 589; *Lang v. Kurtz,* 100 Wis. 2d 40, 44, 301 N.W.2d 262 (Ct. App. 1980).

Fourth, the language in the Department of Transportation's SR–22 certification form does not persuade us otherwise. The SR–22 form divides insurance into an "owner's policy" and an "operator's policy." We are cognizant that where the legislature charges an administra-

---

[13] **344.40 Revocation for failure to maintain proof; other proof may be required. (1)** Whenever any person who has furnished proof of financial responsibility fails to maintain such proof at any time during the period when proof of financial responsibility is required, the secretary shall revoke such person's operating privilege . . ..

Section 344.40(1), Stats., 1989-90.

tive agency to enforce a particular statute that the agency's interpretation of that statute is entitled to great weight. *School Dist. of Drummond v. WERC,* 121 Wis. 2d 126, 132–33, 358 N.W.2d 285 (1984). However, we agree with the court of appeals in this case that it would be speculating to determine from the language of the SR–22 form that the Department of Transportation interpreted the financial responsibility statutes as mandating coverage for vehicles. We therefore give no weight to the SR–22 form as the Department of Transportation's interpretation of the financial responsibility statutes.

The third issue is, did the SR–22 form expand the coverage of Paul Wilson's policy to insure vehicles he owned? Royal argues that the SR–22 form, as filled out by Leader, creates coverage for Post. Leader completed an SR–22 financial responsibility form and filed it with the Department of Transportation to certify that Wilson complied with the financial responsibility statutes. The form divides insurance into an "owner's policy" and an "operator's policy." Leader checked off both types of insurance and, beneath the "owner's policy" section, typed in: "all owned and non-owned vehicles."[14]

Coverage for Julia Post was not created by the manner in which Leader filled out the SR–22 form. First, the

---

[14]The SR–22 form stated in part (with Leader's typed insertions underlined):

The insurance hereby certified is provided by an:

XX OWNER'S POLICY: Applicable to (a) the following described vehicles . . ..

ALL OWNED AND NON-OWNED VEHICLES

XX OPERATOR'S POLICY: Applicable to any non-owned vehicle.

SR-22 was not a part of the insurance contract. The financial responsibility statute is unambiguous regarding what constitutes the insurance policy:

> The policy, the written application therefor, if any, and any rider or endorsement which does not conflict with the provisions of this chapter constitutes the entire contract between the parties.

Section 344.33(5)(d), Stats., 1989-90.

Second, even if we held that the SR-22 was incorporated into the policy by virtue of it being specifically referred to in the policy, because we hold the SR-22 does not create vehicle coverage, its reference in the policy would not create vehicle coverage.

Leader claimed it filled out the SR-22 form in the manner it thought was required by the Department of Transportation to certify coverage. The SR-22 form provided by the Department of Transportation seems to correspond to the pre-1973 statutes since it distinguishes an "owner's policy" from an "operator's policy." As concluded above, the financial responsibility statute requires poor drivers to be insured, not their vehicles. Since the use of the SR-22 form is to certify compliance with the financial responsibility statutes, its use cannot create coverage which is not intended by the current financial responsibility statutes.

The fourth issue is, do the omnibus statutes, which mandate that vehicle insurance cover permissive users of the insured vehicles, create liability coverage for Julia Post? Royal argues that the omnibus statutes, sec. 632.32 *et seq.* Stats., 1989-90, extend coverage to Julia Post. Citing *Groth v. Farmer's Mut. Ins. Automobile Insurance Co.*, 21 Wis. 2d 655, 659, 124 N.W.2d 606 (1963), Royal asserts that the policy behind the omnibus statute is to increase, not decrease coverage. Royal also

asserts that omnibus coverage is imputed to every automobile policy, regardless of whether omnibus coverage is written in the policy, *Drewek v. Milwaukee Automobile Insurance Co.*, 207 Wis. 445, 448, 240 N.W. 881 (1932); *Miller v. Amundson,* 117 Wis. 2d 425, 430, 330 N.W.2d 494 (1984).

While we do not disagree with the principles for which these cases stand, they offer little guidance since the cases cited do not address the issue at hand. The *Groth* case was concerned with expanding coverage of a policy to insure the father of a minor under the statutory provision requiring that coverage extend to "any person legally responsible for" the operation of the vehicle. *Groth,* 21 Wis. 2d at 658. The *Drewek* case involved the issue of whether "permissive use" mandated permission for the specific use for which the vehicle was to be used. The *Miller* case dealt with the issue of coverage provided for a passenger as "additional insured." Royal's arguments are undermined by the fact that the omnibus statutes mandate permissive users to be covered when using a vehicle described in the policy.[15] In *Mills v. Wisconsin Mut. Ins. Co.,* 145 Wis. 2d 472, 482, 427 N.W.2d 397 (Ct.

---

[15]The omnibus statute states in relevant part:

**632.32 Provisions of motor vehicle insurance policies. (1)** Scope. Except as otherwise provided, this section applies to every policy of insurance issued or delivered in this state against the insured's liability for loss or damage resulting from accident caused by any motor vehicle, whether the loss or damage is to property or to a person.

. . ..

(3) Required Provisions. Except as provided in sub. (5), every policy subject to this section issued to an owner shall provide that:

(a) Coverage provided to the named insured applies in the same manner and under the same provisions to any person using any motor vehicle described in the policy when the use is for purposes and in the manner described in the policy.

App. 1988), the court of appeals held that "[t]he omnibus coverage statute does not extend coverage to a vehicle not described in the automobile liability insurance policy." In the present case, no vehicles were described in Wilson's insurance policy, therefore, the permissive use provision is inapplicable.

Lastly, Royal relies on *Germannota National Indemnity Co.,* 119 Wis. 2d 293, 299, 349 N.W.2d 733 (1984), arguing that as a matter of public policy, insurance contracts should be interpreted to comply with the applicable statutes. Since we hold that the Leader policy does comply with the mandates of the financial responsibility statutes and since the permissive use provision of the omnibus statutes are inapplicable, our decision does not conflict with the policy of *Germannota.*

Therefore, we hold that the insurance policy itself, the financial responsibility statutes, the SR–22 form, and the omnibus statutes do not require the Leader National Insurance Company to insure Julia Post.

*By the Court.*—The decision of the court of appeals is affirmed.

---

Section 632.32(1), (3), Stats., 1989–90.