Susan L. BELLILE, Plaintiff-Appellant,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
Defendant-Respondent.

Court of Appeals

*No. 03–0416. Submitted on briefs September 29, 2003.—Decided
March 23, 2004.*

2004 WI App 72

(Also reported in 679 N.W.2d 827.)

Hoover, P.J., concurs.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Todd R. McEldowney* of *O'Melia, Schiek & McEldowney, S.C.* of Rhinelander.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Richard W. Zalewski* and *Michael J. Roman* of *Zalewski, Klinner & Kramer, LLP* of Wausau.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. This is another appeal in a recent line of cases that asks us to determine whether an underinsured motorist (UIM) reducing clause in an automobile insurance policy creates contextual ambiguity.[1] Susan Bellile appeals a declaratory judgment limiting American Family Mutual Insurance Company's liability for UIM coverage to $100,000 after applying the policy's UIM reducing clause. She argues the organization of the policy along with the limit of liability provisions when read in conjunction with the reducing clause creates contextual ambiguity. In light of the supreme court's recent decision in *Folkman v. Quamme*, 2003 WI 116, 264 Wis. 2d 617, 665 N.W.2d 857, we disagree and affirm the judgment.

---

[1] *See Commercial Union Midwest Ins. Co. v. Vorbeck*, 2004 WI App 11, ¶ 41, 674 N.W.2d 665 (concluding no contextual ambiguity resulted); *Dowhower v. Marquez*, 2004 WI App 3, ¶ 29, 268 Wis. 2d 823, 674 N.W.2d 906 (*Dowhower III*) (holding contextual ambiguity occurred); *Van Erden v. Sobczak*, 2004 WI App 40, ¶ 37 (concluding no contextual ambiguity was produced).

## BACKGROUND

¶ 2. On January 6, 2000, Bellile sustained bodily injuries when her vehicle was rear-ended by a vehicle driven by Dorothy Jossart. Jossart was insured by Safeco Insurance and had liability insurance with a per person limit of $50,000. Jossart was 100% causally negligent, and Safeco paid the policy limits.

¶ 3. American Family issued Bellile UIM coverage with a $150,000 "limit" as part of her "Wisconsin Family Car Policy." Bellile commenced an action against American Family for the UIM limit. American Family moved for a declaratory judgment arguing that, pursuant to a reducing clause, it was only required to pay $100,000 due to Bellile having already collected $50,000. Bellile also moved for a declaratory judgment entitling her to recover $150,000.

¶ 4. The trial court granted declaratory judgment to American Family. Shortly thereafter, the Wisconsin Supreme Court issued its decision in *Badger Mutual Insurance Co. v. Schmitz*, 2002 WI 98, 255 Wis. 2d 61, 647 N.W.2d 223. *Schmitz* set forth principles of insurance contract interpretation for UIM provisions and a contextual ambiguity framework. Bellile moved the court to reconsider and set aside the judgment, and the trial court granted the motion.

¶ 5. Bellile again moved for a declaratory judgment that she was entitled to $150,000, arguing the reducing clause in American Family's policy should be invalidated on contextual ambiguity grounds. The trial court once more granted declaratory judgment to American Family. It concluded the policy "clearly sets forth a clear and unambiguous limitation and reducing

clause on the underinsured motorist coverage that is not ambiguous within the context of the entire policy." This appeal follows.[2]

### DISCUSSION

¶ 6. The grant or denial of a declaratory judgment is addressed to the trial court's discretion. *Jones v. Secura Ins. Co.*, 2002 WI 11, ¶ 19, 249 Wis. 2d 623, 638 N.W.2d 575. However, when the exercise of such discretion turns upon a question of law, we review the question de novo, benefiting from the trial court's analysis. *Id.* Here, the issue turns upon the construction of American Family's insurance contract, an exercise that presents a question of law we independently review. *See Folkman*, 264 Wis. 2d 617, ¶ 12. The goal in interpreting insurance contracts is to give effect to the parties' intent. *Id.*, ¶ 16.

¶ 7. Before analyzing the policy, we first outline the policy's structure and content and trace the route the insured would have to take to get to the reducing clause. *See Dowhower v. Marquez*, 2004 WI App 3, ¶ 19, 268 Wis. 2d 823, 674 N.W.2d 906 (*Dowhower III*).

---

[2] In the meantime, the Wisconsin Supreme Court decided *Folkman v. Quamme*, 2003 WI 116, 264 Wis. 2d 617, 665 N.W.2d 857, which "clarified [*Badger Mutual Insurance Co. v. Schmitz*, 2002 WI 98, 255 Wis. 2d 61, 647 N.W.2d 223] and the analytical framework that courts are to apply in cases alleging contextual ambiguity in insurance policies." *See Dowhower III*, 268 Wis. 2d 823, ¶ 2. After *Folkman*'s release, the parties filed letter briefs to adjust their arguments.

This case had been placed on hold pending the release of similar cases from District I, *Van Erden*, 2004 WI App 40; and District II, *Dowhower III*, 2004 WI App 3, and *Vorbeck*, 2004 WI App 11; and is being released simultaneously with District III, *Gohde v. MSI Insurance Co.*, 2004 WI App 69.

### I. The Policy's Organization and Language

¶ 8. The "Wisconsin Family Car Policy" American Family issued to Bellile is relatively straightforward. By our count, it is thirteen pages long. The first and second pages comprise the declarations followed by a quick reference sheet on the third page. The fourth through eleventh pages constitute the original policy (numbered pages one through eight) and the underinsured motorist coverage is a two-page endorsement that appears at the end.

¶ 9. The first page of the declarations contains, among other things, lists for the policy's **"COVERAGES AND LIMITS PROVIDED."** The UIM coverage is the last listed coverage and appears as follows:

ENDORSEMENT—SEE BELOW
UNDERINSURED MOTORISTS COVERAGE –
BODILY INJURY ONLY
$150,000 EACH PERSON $300,000 EACH ACCIDENT

While nowhere in the declarations does it state that the UIM coverage is subject to a reducing clause, the top of the page states **"PLEASE READ YOUR POLICY."** Further, the bottom of the page contains three sentences, and part of one reads, "These declarations form a part of this policy." On the second page of the declarations appears the following:

- **AGREEMENT**

**We** agree with **you**, in return for **your** premium payment, to insure **you** subject to all the terms of this policy. **We** will insure **you** for the coverages and the limits of liability as shown in the declarations of this policy.

330

¶ 10. After the declarations page is the policy's quick reference sheet. Near the top of the reference sheet are the following statements:

> This policy is a legal contract between you (the policy-holder) and the company. The following Quick Reference is only a brief outline of some important features in your policy and is not the insurance contract. The policy details the rights and duties of you and your insurance company. **Read your policy carefully**.

The quick reference sheet then lists three sections—"If You Have An Auto Accident or Loss," "Agreement," and "Definitions"—and then lists the policy's six formal parts: (1) "Liability Coverage," (2) "Medical Expense Coverage," (3) "Uninsured Motorists Coverage," (4) "Car Damage Coverages," (5) "Emergency Road Service Coverage," and (6) "General Provisions." Because UIM coverage is dealt with in an endorsement, the UIM coverage is not listed in the quick reference sheet, nor is it dealt with in the eight pages of the policy's body.

¶ 11. Following the policy's body is the two-page UIM endorsement. The endorsement is designated in large bold-faced typecast as, "**UNDERINSURED MOTORISTS (UIM) COVERAGE ENDORSEMENT – KEEP WITH POLICY**." On the first page, before laying out additional definitions, the endorsement states:

> This endorsement forms a part of the policy to which it is attached and replaces any Underinsured Motorists Coverage previously issued as a part of this policy. **You** have this coverage if Underinsured Motorists Coverage is shown in the declarations.
>
> **We** will pay compensatory damages for **bodily injury** which an **insured person** is legally entitled to recover from the owner or operator of an **underinsured mo-**

331

**tor vehicle**. The **bodily injury** must be sustained by an **insured person** and must be caused by accident and arise out of the **use** of the **underinsured motor vehicle**.

. . . .

**We** will pay under this coverage only after the limits of liability under any **bodily injury** liability bonds or policies have been exhausted by payment of judgements or settlements.

¶ 12. In the additional definitions section, "underinsured motor vehicle" is defined as "a **motor vehicle** which is insured by a liability bond or policy at the time of the accident which provides **bodily injury** liability limits less than the limits of liability of this Underinsured Motorist coverage." However, neither "underinsured motorist coverage" nor "reducing clause" is defined.

¶ 13. After the definitions come three exclusions, and then the "**LIMITS OF LIABILITY**" section. It states the UIM coverage limits of liability as shown in the declarations apply, subject to the following:

1. The limit for each person is the maximum for all person [sic] as the result of **bodily injury** to one person in any one accident.

2. Subject to the limit for each person, the limit for each accident is the maximum for **bodily injury** sustained by two or more persons in any one accident.

The section then states:

**We** will pay no more than these maximums no matter how many vehicles are described in the declarations, **or insured persons**, claims, claimants, policies, or vehicles are involved.

332

The limits of liability of this coverage may not be added to the limits of liability of any similar coverage under any other policy an **insured persons** or any member of an **insured persons** household may have.

**We** will pay only once for any damages or expenses payable under more than one coverage of this policy. Any damages or expenses paid under any other coverage of this policy are not eligible for payment under this coverage.

¶ 14. The reducing clause immediately follows this language and is located at the top of the endorsement's second page. It reads:

The limits of liability of this coverage will be reduced by:

1. A payment made or amount payable by or on behalf of any person or organization which may be legally liable, or under any collectible auto liability insurance, for loss caused by an accident with an **underinsured motor vehicle**.

2. A payment under the Liability coverage of this policy.

3. A payment made or amount payable because of **bodily injury** under any workers' compensation or disability benefits law or any similar law.

With this organization and language in hand, we now turn to Bellile's arguments.

## II. The UIM Provisions are Not Contextually Ambiguous

¶ 15. Bellile agrees that the reducing clause conforms with WIS. STAT. § 632.32(5)(i).[3] Thus, the clause itself is not ambiguous or contrary to public policy. *See Schmitz,* 255 Wis. 2d 61, ¶ 61. We now consider whether the reducing clause is ambiguous in context of the entire insurance contract. *See id.,* ¶ 75; *Folkman,* 264 Wis. 2d 617, ¶ 22.

¶ 16. Contextual ambiguity occurs where a provision's words or phrases, when read in context of the policy's other language, reasonably or fairly lead to more than one construction. *Folkman,* 264 Wis. 2d 617, ¶ 29. "The standard for determining a reasonable and fair construction is measured by the objective understanding of an ordinary insured." *Id.* We may not isolate a small part of the policy from the context of the whole policy to find ambiguity. *Id.,* ¶ 21. We must also be cognizant of the fact that some ambiguity is unavoidable. *Id.,* ¶ 18. Contextual ambiguity will only exist if the policy is so ambiguous, obscure, or deceptive that it "befuddles the understanding and expectations of a reasonable insured." *Id.,* ¶ 20. This ambiguity "must be genuine and apparent on the face of the policy." *Id.,* ¶ 29.

¶ 17. We first look to the declarations and the quick reference index. *See Schmitz,* 255 Wis. 2d 61, ¶¶ 62–63. Bellile notes the declarations lists UIM coverage of $150,000 and does not mention this coverage is

---

[3] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

subject to reduction by payments from other sources. *See id.,* ¶ 62. Moreover, the quick reference sheet does not list UIM coverage.

¶ 18. We cannot disagree with Bellile's observations regarding the shortcomings of the declarations and quick reference index. Be that as it may, "a lack of immediate explanation of a policy's reducing clause is not dispositive." *Dowhower III,* 268 Wis. 2d 823, ¶ 20. This explanation is not required in the declarations because insurers cannot be expected to address every nuance of coverage in the declarations itself. *Folkman,* 264 Wis. 2d 617, ¶ 56.

¶ 19. Looking at the declarations as a whole, it does not present "inconsistent provisions, provisions that build up false expectations, [or] provisions that produce reasonable alternative meanings." *Id.,* ¶ 31. We conclude the declarations provides adequate warning to the insured that the UIM coverage limits cannot be determined by looking solely at the declarations. At the top of the declarations' first page there appears in highlighted language, **"PLEASE READ YOUR POLICY,"** and at the bottom of the page it states "[t]hese declarations form a part of this policy." Additionally, the declarations' second page states, **"We** agree with **you,** in return for **your** premium payment, to insure **you** *subject to all the terms of this policy."* (Emphasis added.) These provisions, which are not buried within the page, emphasize the declarations is but one component of the whole policy and that the rest of the policy must be referred to before a reasonable expectation of coverage can be formed.

¶ 20. Most importantly, just above where the UIM coverage is listed at $150,000 per person, $300,000 per accident, the policy states "ENDORSEMENT—SEE

335

BELOW." Bellile argues a reasonable insured would understand the "ENDORSEMENT—SEE BELOW" language to refer to what was immediately below, namely that the UIM coverage was $150,000 per person and $300,000 per accident. *See infra* ¶ 9. However, in light of the other language in the declarations discussed above, we determine a reasonable insured would understand the "see below" language as directing him or her to see the endorsement itself, which is located below; in this case, at the end of the policy. Therefore, the declarations page is clear enough to alert a reasonable insured to refer to UIM endorsement for limitations on coverage. *See Folkman*, 264 Wis. 2d 617, ¶ 19.

¶ 21. We also conclude the quick reference index's failure to list UIM coverage, although inadvisable, does not force an insured to traverse an organizationally complex maze of a policy. *See id.*, ¶ 55. Quite simply, finding the endorsement is not an arduous task. As indicated above, the policy's body is only eight pages long, and it is followed by the two-page UIM endorsement. The endorsement is clearly designated in highlighted type as **"UNDERINSURED MOTORISTS (UIM) COVERAGE ENDORSEMENT – KEEP WITH POLICY"** at the end of the policy. And once the insured finds this addition, he or she will notice that all the relevant provisions relating to UIM coverage, aside from the limit of liability (which is listed in the declarations), are contained within the two-page endorsement. What is more, the reducing clause is logically placed immediately after the "limits of liability" section. For these reasons, we conclude the policy's and UIM provisions' organization is not so ambiguous, obscure, or deceptive that it confounds the understanding and expectations of a reasonable insured. *See id.*, ¶ 30.

¶ 22. We now turn to the endorsement's language. *See id.*, ¶ 39. Bellile notes that the endorsement's limits of liability section states:

> The limits of liability of this coverage as shown in the declarations apply, subject to the following:
>
> 1. The limit for each person is the maximum for all person [sic] as the result of **bodily injury** to one person in any one accident.
>
> 2. Subject to the limit for each person, the limit for each accident is the maximum for **bodily injury** sustained by two or more persons in any one accident.
>
> **We** will pay no more than these maximums no matter how many vehicles are described in the declarations, or **insured persons**, claims, claimants, policies or vehicles are involved.

Bellile's objection to these provisions centers on American Family's use of the word "maximum." She explains that the lay dictionary definition of maximum is "the greatest quantity or value attainable in a given case," and "an upper limit allowed by law or other authority." WEBSTER'S THIRD NEW INT'L DICTIONARY 1396 (unabr. 1993). However, given the reducing clause, the maximum—or, the greatest quantity attainable—is never within reach. Because it is impossible to give both provisions their significance, Bellile argues contextual ambiguity results. *See Maas v. Ziegler*, 172 Wis. 2d 70, 80–81, 492 N.W.2d 621 (1992) (duty of court to construe contracts to avoid construction that renders one or more of its provisions meaningless).

¶ 23. The provisions do conflict, but they do not create ambiguity, let alone a sufficient degree of contex-

tual ambiguity to engender objectively reasonable alternative meanings. *See Folkman,* 264 Wis. 2d 617, ¶ 30. As noted in *Dowhower III,* 268 Wis. 2d 823, ¶ 27, "*Folkman* dictates that when considering an alleged contextual ambiguity, we must look beyond a single clause or sentence and look at the contract as a whole." When the reducing clause and the limits of liability section are read together, a reasonable insured is told that his or her UIM coverage will be decreased pursuant to the reducing clause. In other words, the reducing clause unambiguously qualifies American Family's obligation to pay the maximum limits of liability contained in the immediately preceding paragraph and declarations. Therefore, the policy adequately sets forth that the insured is purchasing a fixed level of UIM coverage that will be arrived at by combining payments made from all sources. *See Dowhower v. West Bend Mut. Ins. Co.,* 2000 WI 73, ¶ 33, 236 Wis. 2d 113, 613 N.W.2d 557 (*Dowhower II*); *see also Commercial Union Midwest Ins. Co. v. Vorbeck,* 2004 WI App 11, ¶¶ 41–42, 674 N.W.2d 665 (similar policy language found not contextually ambiguous).

*By the Court.*—Judgment affirmed.

¶ 24. HOOVER, P.J. (*concurring*). I think the policy in our case, while not presenting an organizationally complex "maze," is "plainly contradictory" in exactly the same manner as the policy in *Badger Mut. Ins. Co. v. Schmitz,* 255 Wis. 2d 61, 647 N.W.2d 223. The question is, is this enough? Are the "false signals," *Folkman v. Quamme,* 2003 WI 116, ¶ 55, 264 Wis. 2d 617, 665 N.W.2d 857, the policy sends to Bellile sufficient to avoid the reducing clause, or in light of *Folkman,* is more needed? Given the tenor of *Folkman,* I agree with the majority and our other post-*Folkman*

338

cases that the inconsistencies partially driving the *Schmitz* decision, as explicated in *Folkman*, would now, in context, be seen by our supreme court as only benignly ambiguous. Thus, the supreme court would conclude, these inconsistencies would not engender objectively reasonable alternative meanings.

¶ 25. *Folkman* carefully compared the policy before it to that in *Schmitz. Schmitz* dealt with a lengthy and complex insurance policy. But, according to *Folkman*, this was not the exclusive basis upon which the *Schmitz* court held that the policy's reducing clause was inoperative. Rather, *Folkman* further teaches that "a policy should avoid inconsistent provisions, provisions that build up false expectation, and provisions that produce reasonable alternative meanings." *Folkman*, 264 Wis. 2d 617, ¶ 31. However, "inconsistencies in the context of a policy must be material to the issue in dispute and be of such a nature that a reasonable insured would find an alternative meaning." *Id.*, ¶ 32.

¶ 26. In comparing the *Folkman* circumstances to those in *Schmitz*, the supreme court noted in the latter case that "a reasonable insured would likely believe that the purchase of, say, $200,000 in underinsured motorist coverage would lead to a $200,000 payment from the insurer depending on the insured's level of damages" because this was the limit stated in the declarations. *Folkman*, 264 Wis. 2d 617, ¶ 51. But, as the *Folkman* court noted, "because the policy contained a reducing clause, the insurer would *never* pay $200,000 to the insured . . . ." *Id.* The *Folkman* court went on to observe that the effect of the reducing clause was only made clear in the reducing clause itself, with no explanation. *Id.*, ¶ 53. This appears to be material because the *Folkman* court goes on to note that the UIM page contained a "typical limits of liability provision followed

339

immediately after the schedule for underinsured motorist coverage. It stated, among other things, "This is the most we will pay,' implying that it would pay the policy limits, although it never would." *Id.* Thus, the *Folkman* court observed, *Schmitz* concluded that the policy there at issue was "a maze that is organizationally complex and plainly contradictory." *Id.*, ¶ 55.

¶ 27. As implied, I think at the core of *Folkman* is the supreme court's tacit retreat from some of the very considerations that led to the result in *Schmitz*, its painstaking references to that case notwithstanding. Thus, even though our case presents some features similar to the *Schmitz* case, I agree with the majority that the policy at issue is not ambiguous under *Folkman*.