Kevin P. McKillip, Plaintiff-Appellant,

v.

Jeremy Bauman, Defendant,

Guaranty National Insurance Company, p/k/a
Viking Insurance Company,
Defendant-Respondent,

Nathan H. Ohlfs and State Farm Fire and Casualty Company, Defendants-Co-Appellants.

Court of Appeals

*No. 2004AP2489. Submitted on briefs May 16, 2005.
—Decided June 22, 2005.*

2005 WI App 165

(Also reported in 702 N.W.2d 79.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Michael J. Kelly* of *Lloyd, Phenicie, Lynch, Kelly & Hotvedt, S.C.*, Burlington.

On behalf of the defendants-co-appellants, the cause was submitted on the briefs of *Thomas E. Goss, Jr.* of *Mueller, Goss & Possi, S.C.*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Frederick J. Smith* of *Peterson, Johnson & Murray, S.C.*, Milwaukee.

Before Anderson, P.J., Brown and Snyder, JJ.

¶ 1. ANDERSON, P.J.   Kevin P. McKillip, Nathan H. Ohlfs and State Farm Fire and Casualty Company appeal from a circuit court order granting summary judgment in favor of Guaranty National Insurance Company p/k/a Viking Insurance Company and dismissing it from the case. There are two issues in this appeal. First, whether, by its terms, the insurance policy Guaranty National issued to Jeremy Bauman covers Ohlfs as a permissive user of one of Bauman's vehicles. We hold

that it does not. Second, whether the financial responsibility statutes, Wis. Stat. ch. 344, mandate that Guaranty National's policy extend coverage to Ohlfs as a permissive user of one of Bauman's vehicles. We hold that they do not. Accordingly, we affirm the order of the circuit court.

## FACTS

¶ 2. On March 23, 2003, Ohlfs was allegedly operating Bauman's 1996 Chevrolet Tahoe on McKillip's property when dry grass caught fire. The fire destroyed more than 14,000 of the trees in McKillip's stock. Bauman had allegedly given Ohlfs permission to drive the Tahoe, which he had purchased in August 2002. McKillip filed trespass and negligence actions against Bauman and Ohlfs and their respective automobile liability insurers.

¶ 3. Prior to the incident, Guaranty National had issued Bauman a "Named Operator" insurance policy with a non-owner endorsement as proof of financial responsibility, in compliance with Wisconsin's financial responsibility statutes, Wis. Stat. ch. 344 (2003-04).[1] Bauman also received an "SR-22 Financial Responsibility Form."

¶ 4. The record copy of the "SR-22 Financial Responsibility Form" is very difficult to read. From what we can tell, the form contains two separate boxes for the insurer to check, one labeled "OWNER'S POLICY —applicable to the following described vehicles" and the other labeled "OPERATOR'S POLICY—applicable to any non-owned vehicle." Underneath the box marked "OWNER'S POLICY" is a box where the model year and

---

[1] State Farm had also issued Ohlfs an automobile insurance policy before the accident. The terms of that policy, however, are not pertinent to this appeal.

trade name of each owned vehicle may be listed. Bauman's form does not list any specific vehicles, but rather states "owned and non-owned." The form states that it is in effect from December 1999 until it is cancelled.

¶ 5. On January 6, 2003, Guaranty National issued Bauman a renewal offer of coverage certifying dates of February 19, 2003, to August 19, 2003. The renewal notice provides in dark print, "This policy provides Liability coverage for only the named insured while driving owned and non-owned vehicles." The policy's "NON-OWNER ENDORSEMENT" states in "Part I—Liability," "**We** will pay damages for which **you** are legally liable because of **bodily injury** and/or **property damage** caused by a **car accident** arising out of the use of **your insured car**. **We** will settle any claim or defend any lawsuit which is payable under the policy." The "NON-OWNER ENDORSEMENT" goes on to provide: "As used in this Part, '**insured person**' or '**insured persons**' means **you** while **you** are using a **non-owned car** with permission of the owner." Finally, the endorsement sets forth the following pertinent definitions:

(8) "**Your insured car**" means:

    (A)  A **non-owned car** which **you** are using with the permission of the owner;

    (B)  Any **car** of which **you** acquire ownership during the policy period. For coverage to apply under Part I—Liability coverage, **you** must, however, notify **us** within 14 days of its acquisition. Car Damage coverage will apply to the newly acquired **car** only if **you** ask **us** to provide such coverage and **we** agree to do so.

**You** must pay any additional premium charges for coverage for the newly acquired **car**.

(15) "**Non-owned car**" means a **car** not owned or leased by **you**; not including a car owned or leased by members of the household in which **you** reside.

¶ 6.   Guaranty National filed a motion for summary judgment. Guaranty National argued that the definition of "**your insured car**" in the non-owner endorsement precludes coverage for McKillip's claims. Guaranty National maintained that the policy would have only provided liability coverage for damages arising out of the car accident had Bauman notified Guaranty National of his acquisition of the vehicle. Guaranty National further asserted that the financial responsibility statutes do not "provide coverage for a permissive user of an insured's vehicle, such as [Ohlfs] in the case at bar."

¶ 7.   McKillip, Ohlfs and State Farm responded that based on recent amendments to the financial responsibility statutes, coverage is mandated for both the named insured and permissive users of any vehicle the named insured owns. They also claimed that Guaranty National's policy must be read to extend coverage to permissive users of any vehicle Bauman owns.

¶ 8.   The circuit court granted Guaranty National's motion for summary judgment and dismissed it from the case. The court explained that while the financial responsibility statutes, as amended, required insured vehicle owners to have coverage, it did not place the burden on the insurer to provide that coverage where, as here, the insured failed to notify the insurer that a vehicle had been purchased. The court characterized Guaranty National's coverage as being an operator's policy under

652

the financial responsibility statutes, which would only extend coverage for a vehicle acquired by Bauman subsequent to the issuance of the policy if Bauman timely notified it of his ownership. McKillip, Ohlfs and State Farm (collectively, the appellants) now appeal.

## STANDARD OF REVIEW

¶ 9. We review the circuit court's grant of summary judgment de novo, using the same methodology as the circuit court. *Mullen v. Walczak*, 2003 WI 75, ¶ 11, 262 Wis. 2d 708, 664 N.W.2d 76. Summary judgment is appropriate if the pleadings and other information on file show there is no "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.*; *see also* WIS. STAT. § 802.08(2).[2] Here, the pertinent facts are undisputed, leaving only issues of law for our consideration. Specifically, this case involves the interpretation of Guaranty National's insurance policy and WIS. STAT. ch. 344, issues that we review de novo. *See Mullen*, 262 Wis. 2d 708, ¶ 12 (interpretation of an insurance policy); *Gonzalez v. Teskey*, 160 Wis. 2d 1, 7–8, 465 N.W.2d 525 (Ct. App. 1990) (interpretation of statutes).

## DISCUSSION

¶ 10. The appellants challenge the circuit court's ruling that Guaranty National's policy did not extend coverage to Ohlfs as a permissive user of Bauman's Tahoe on two grounds. First, they maintain that Guaranty National's policy, as written, must be read as

---

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

extending coverage to Ohlfs as a permissive user of one of Bauman's vehicles. In the alternative, they argue that the financial responsibility statutes mandate that we read Guaranty National's policy as extending coverage to any vehicle Bauman operates and to permissive users of any vehicle he owns. We address each argument in turn.

### Coverage Pursuant to the Terms of Guaranty National's Policy

¶ 11.   The appellants claim that an irreconcilable discrepancy exists between the language contained in the renewal notice and "SR-22 Financial Responsibility Form" and the language contained in the non-owner endorsement. They argue that the "SR-22 Financial Responsibility Form" and renewal notice, which both indicate that an insured is covered while driving an "owned or non-owned" vehicle, would lead a reasonable insured to believe the policy covered *any* vehicle he or she owned and therefore any permissive user of such vehicles. They maintain that these provisions are in direct conflict with the non-owner endorsement's definition of "**your insured car**," which sets forth specific requirements an insured must satisfy for an owned vehicle to receive coverage. According to the appellants, this alleged inconsistency gives rise to contextual ambiguity that must be resolved in favor of coverage of Ohlfs as a permissive user of Bauman's Tahoe.

■

¶ 12.   We first briefly address Bauman's argument that the "SR-22 Financial Responsibility Form" creates ambiguity within the insurance policy regarding vehicle coverage. Our supreme court has already held that this form is not a part of the insurance contract. *Cardinal v. Leader National Insurance Co.*, 166 Wis. 2d 375, 391–92, 480 N.W.2d 1 (1992) (holding that Wis. Stat.

§ 344.33(5)(d) (1989–90), unambiguously sets forth what constitutes the insurance contract, "The policy, the written application therefore, if any, and any rider or endorsement which does not conflict with the provisions of this chapter constitutes the entire contract between the parties").[3] Because the form is not a part of the insurance contract, we will not consider it in our analysis of the appellants' contextual ambiguity claim.

¶ 13. In order to create the supposed contextual ambiguity, the appellants seem to read the language in the renewal notice in isolation. The appellants misunderstand the concept of contextual ambiguity. Contextual ambiguity occurs where a provision's words or phrases, *when read in context of the policy's other language,* reasonably or fairly lead to more than one construction. *Bellile v. American Family Mut. Ins. Co.,* 2004 WI App 72, ¶ 16, 272 Wis. 2d 324, 679 N.W.2d 827. "The standard for determining a reasonable and fair construction is measured by the objective understanding of an ordinary insured." *Id.* (citation omitted). We may not isolate a small part of the policy from the context of the whole policy to find ambiguity. *Id.*

¶ 14. We conclude that Guaranty National's policy, when read in its entirety, clearly and unambiguously sets forth the requirements for coverage of a permissive user of an insured's owned vehicles. The renewal notice and the non-owner endorsement compliment, rather than contradict, one another.

---

[3] While certain provisions in the financial responsibility statutes have been amended in the years since the *Cardinal v. Leader National Insurance Co.,* 166 Wis. 2d 375, 480 N.W.2d 1 (1992), decision, WIS. STAT. § 344.33(5)(d), which governs the scope of an insurance policy, remains unchanged.

¶ 15. The renewal notice merely indicates that coverage exists for "the named insured while driving owned or non-owned vehicles." The notice does not list any specific owned vehicle that is to be covered or any special conditions that must be met for such vehicles to be covered. Further, the notice does not speak to coverage for permissive users of owned vehicles.

¶ 16. The non-owner endorsement reaffirms the renewal notice's promise to afford coverage for the insured driving non-owned and certain owned vehicles. It also, not inconsistent with the renewal notice, extends coverage to permissive users of such owned vehicles. The non-owner endorsement simply clarifies for the insured that coverage for an owned vehicle can be obtained after the insured notifies Guaranty National of the acquisition of the vehicle, Guaranty National agrees to insure that vehicle and the insured pays any additional premiums to cover that vehicle. Thus, the provision in the renewal notice *when read in the context of the entire policy* would reasonably lead an insured to only one conclusion—that the specific conditions set forth in the non-owner endorsement have to be met for the policy to cover permissive users of owned vehicles. Because Bauman never notified Guaranty National that he purchased the Tahoe, Guaranty National never agreed to cover the Tahoe and Bauman never paid any additional premiums for coverage of the Tahoe, the policy, as written, does not provide coverage for Ohlfs as a permissive user of the Tahoe.

### Coverage Pursuant to the Financial Responsibility Statutes

¶ 17. The financial responsibility statutes, as a condition precedent to reinstatement, require both vehicle operators who have had their licenses revoked or

suspended and vehicle owners who have had their vehicle registrations revoked or suspended to show proof of financial responsibility for the future. *See* Wis. Stat. § 344.24. This requirement can be fulfilled by obtaining liability insurance with the coverage defined in Wis. Stat. § 344.33 and by certifying such coverage under Wis. Stat. § 344.31. Section 344.33(2) provides in pertinent part:

> **(2)** Motor vehicle liability policy. A motor vehicle policy of liability insurance *shall insure the person named therein using any motor vehicle with the express or implied permission of the owner, or shall insure any motor vehicle owned by the named insured and any person using such motor vehicle with the express or implied permission of the named insured,* against loss from the liability imposed by law for damages arising out of the maintenance or use of the motor vehicle within the United States of America or the Dominion of Canada . . . . (Emphasis added.)

Section 344.31 specifies:

> **Certification of insurance as proof.** Proof of financial responsibility for the future may be furnished by filing with the secretary the written certification of any insurer duly authorized to do business in this state that there is in effect a motor vehicle liability policy for the benefit of the person required to furnish proof of financial responsibility or by transmitting such certification to the secretary by another means approved by the secretary. Such certification shall give the effective date of such motor vehicle liability policy, which date shall be the same as the effective date of the certification and *shall certify coverage for any motor vehicle operated by the named insured if the certification is required to be furnished by a vehicle operator or coverage for any motor vehicle owned by the named insured if the certification is required to be furnished by a vehicle owner.* (Emphasis added.)

657

¶ 18. The appellants maintain that despite the use of the disjunctive "or," the statute should be read in the conjunctive, mandating insurance on the person (an operator's policy) and on all the vehicles such person may own (an owner's policy). Thus, they claim we must construe Guaranty National's policy as extending coverage not only to Bauman but also to Ohlfs as a permissive user of Bauman's Tahoe.[4] We reject the appellants' arguments for two reasons.[5]

---

[4] The parties dispute whether the circuit court properly relied on *Cardinal*, in which our supreme court held that the financial responsibility statutes mandate insurance on the person, not on the vehicles such person may own. *Cardinal*, 166 Wis. 2d at 388. The financial responsibility statutes have been amended since the *Cardinal* decision. Because the appellants' challenge presents a question of pure statutory interpretation, we will focus our attention on the plain language of the statutes as amended.

[5] The appellants argue that *Bindrim v. B. & J. Insurance Agency*, 190 Wis. 2d 525, 527 N.W.2d 320 (1995), controls this case. *Bindrim*, however, is easily distinguished on two grounds. First, in *Bindrim*, the court reaffirmed the principle that the financial responsibility statutes require the policy to insure drivers operating any vehicle, regardless of whether he or she owns that vehicle. *Id.* at 533. Here, the question is not whether the statutes mandate coverage for Bauman while he is driving an owned vehicle, but rather whether the statutes mandate coverage for a permissive user of Bauman's owned vehicles. Second, in *Bindrim*, the court held that pursuant to Wis. Stat. § 632.32(6)(b)1, part of the omnibus coverage statute, a non-owner's policy "must, like a policy that insures a vehicle, provide coverage to all members of a household related by blood or marriage to the named insured." *Bindrim*, 190 Wis. 2d at 540. Here, Ohlfs is not a member of a household related by blood or marriage to Bauman and therefore § 632.32(6)(b)(1) does not apply. Furthermore, because Bauman's policy does not describe

¶ 19.   First, the financial responsibility statutes, as amended by 1999 Wis. Act 80, §§ 62–63, clearly do not require an insurer to issue an owner's policy and an operator's policy to each insured in every case. Prior to the recent amendments, the statutes mandated insurance only on persons, but not on such persons' vehicles. *See* Wis. Stat. §§ 344.33 and 344.31 (1989–90). In 1999, the legislature added the following italicized language to §§ 344.33(2) and 344.31 respectively:

> Motor vehicle liability policy.   A motor vehicle policy of liability insurance shall insure the person named therein using any motor vehicle with the express or implied permission of the owner, *or shall insure any motor vehicle owned by the named insured and any person using such motor vehicle with the express or implied permission of the named insured* . . . . (Emphasis added.)

> **Certification of insurance as proof** . . . .   Such certification shall give the effective date of such motor vehicle liability policy, which date shall be the same as the effective date of the certification and shall certify coverage for any motor vehicle operated by the named insured *if the certification is required to be furnished by a vehicle operator or coverage for any motor vehicle owned by the named insured if the certification is required to be furnished by a vehicle owner.* (Emphasis added.)

1999 Wis. Act 80, § 62–63. The notes following the 1999 amendments state:

any specific motor vehicle, the omnibus coverage statute does not otherwise demand coverage in this case. *See* s 632.32(3)(a) ("[c]overage provided to the named insured applies . . . to any person using any motor vehicle *described* in the policy" (emphasis added)).

NOTE: *SECTIONS 62 and 63 amend current law regarding the required filing of proof of financial responsibility for the future to require vehicle owners, and not just vehicle operators, to file this proof.* 1991 Wisconsin Act 269 made significant changes to Wisconsin's safety responsibility law. One of these changes required vehicle owners to file proof of financial responsibility before reinstatement of suspended or revoked vehicle registrations. This change was not carried over to the statutes requiring the filing of proof of financial responsibility for the future, and these SECTIONS make that change.

1999 Wis. Act 80, § 62 (Note) (emphasis added). The notes to the amendments make it clear that the changes were meant to make the safety responsibility statutes, which address security for past accidents, and the financial responsibility statutes, which address security in the event of future accidents, consistent. The legislature accomplished this by adding a class of persons, already present in the safety responsibility statutes, to the financial responsibility statutes—vehicle owners whose registration had been revoked or suspended. The notes clarify that the amendments simply created the same certification requirements for both vehicle owners seeking reinstatement of revoked or suspended registration and vehicle operators seeking reinstatement of revoked or suspended operator's licenses. Thus, contrary to the appellants' assertions, the amendments did not eliminate the possibility of fulfilling the financial responsibility statutes' requirements by obtaining only operator's coverage.

¶ 20.    Second, the appellants have a fundamental misconception about the financial responsibility statutes. It is incumbent upon the person seeking insurance

660

to inform the insurance company of whether he or she wants an operator's policy, an owner's policy, or both. It is not the insurer's duty, absent instruction from the insured, to issue both types of policies.

¶ 21. Here, Guaranty National issued Bauman a "Named Operator's" policy with a non-owner endorsement in compliance with the financial responsibility statutes. The policy, by its terms, unambiguously provides coverage for Bauman as the named insured and for a permissive user of an owned vehicle meeting the preconditions to coverage. Had Bauman wanted an owner's policy in addition to his operator's policy, it was his responsibility to inform Guaranty National that such was the case. It was not Guaranty National's duty to issue him a policy covering all his owned vehicles and their permissive users—especially when Bauman had not informed Guaranty National of the acquisition of any vehicles and had not paid any additional premiums for coverage of any vehicles. We will not now rewrite Guaranty National's policy to bind it to a risk it was unwilling to cover, and for which it was not paid. *See Garriguenc v. Love*, 67 Wis. 2d 130, 135, 226 N.W.2d 414 (1975).

## CONCLUSION

¶ 22. Guaranty National's policy by its own terms insures permissive users of Bauman's owned vehicles, provided Bauman satisfies the conditions set forth in the non-owner endorsement for coverage of owned vehicles. Because Bauman did not satisfy those prerequisites to coverage, the policy does not cover Ohlfs as a permissive user of the Tahoe. Furthermore, the financial responsibility statutes do not mandate that we read Guaranty National's policy as extending coverage to Ohlfs as the permissive user of the Tahoe. The circuit

court therefore properly granted summary judgment in favor of Guaranty National.

*By the Court.*—Order affirmed.