# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:        2020AP285

†Petition for Review filed.

Complete Title of Case:

> SAVANAH R. THOM,
>
> PLAINTIFF-APPELLANT-CROSS-RESPONDENT,†
>
> WISCONSIN DEPARTMENT OF HEALTH SERVICES,
>
> INVOLUNTARY-PLAINTIFF,
>
> V.
>
> 1ST AUTO & CASUALTY INSURANCE COMPANY, MATTHEW
> FOERSTER, WENDY FOERSTER, JASON FOERSTER, JANICE
> FOERSTER, DONALD FOERSTER, UNITY HEALTH PLANS INSURANCE
> COMPANY, ALEX AZAR, SECRETARY OF THE U.S. DEPARTMENT
> OF HEALTH & HUMAN SERVICES, DEAN HEALTH PLAN, INC. AND
> CIGNA-HEALTHSPRING, A DIVISION OF CIGNA HEALTH AND LIFE
> INSURANCE COMPANY,
>
> DEFENDANTS,
>
> RURAL MUTUAL INSURANCE COMPANY,
>
> DEFENDANT-RESPONDENT-CROSS-APPELLANT.

| | |
|---|---|
| Opinion Filed: | April 22, 2021 |
| Submitted on Briefs: | August 20, 2020 |

| | |
|---|---|
| JUDGES: | Fitzpatrick, P.J., Blanchard, and Graham, JJ. |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the plaintiff-appellant-cross-respondent, the cause was |

submitted on the briefs of *Jesse B. Blocher* and *Robert L. Jaskulski* of *Habush Habush & Rottier S.C.*, Waukesha.

Respondent
ATTORNEYS:          On behalf of the defendant-respondent-cross-appellant, the cause was submitted on the briefs of *Christine M. Rice* and *Nicole R. Radler* of *Simpson & Deardorff, S.C.,* Milwaukee.

| COURT OF APPEALS DECISION DATED AND FILED | NOTICE |
|---|---|

## COURT OF APPEALS DECISION DATED AND FILED

## April 22, 2021

Sheila T. Reiff
Clerk of Court of Appeals

### NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP285**

Cir. Ct. No. **2017CV28**

STATE OF WISCONSIN

IN COURT OF APPEALS

---

SAVANAH R. THOM,

    PLAINTIFF-APPELLANT-CROSS-RESPONDENT,

WISCONSIN DEPARTMENT OF HEALTH SERVICES,

    INVOLUNTARY-PLAINTIFF,

  V.

1ST AUTO & CASUALTY INSURANCE COMPANY, MATTHEW FOERSTER, WENDY FOERSTER, JASON FOERSTER, JANICE FOERSTER, DONALD FOERSTER, UNITY HEALTH PLANS INSURANCE COMPANY, ALEX AZAR SECRETARY OF THE U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES, DEAN HEALTH PLAN, INC., AND CIGNA-HEALTHSPRING, A DIVISION OF CIGNA HEALTH AND LIFE INSURANCE COMPANY,

    DEFENDANTS.

RURAL MUTUAL INSURANCE COMPANY,

    DEFENDANT-RESPONDENT-CROSS-APPELLANT,

---

APPEAL and CROSS-APPEAL from an order of the circuit court for Jefferson County:  ROBERT F. DEHRING, Judge.  *Affirmed*.

Before Fitzpatrick, P.J., Blanchard, and Graham, JJ.

¶1    GRAHAM, J.  Savanah Thom was severely injured when her vehicle collided with another vehicle driven by a thirteen-year-old child.  Thom brought claims against several of the child's relatives and their insurers.  Thom sought, in relevant part, a money judgment against the child's insurers based on his negligent operation of the vehicle and against the child's parents, Jason and Wendy Foerster, for their alleged negligent failure to control and supervise their child.[1]

¶2    This appeal concerns a single defendant, Rural Mutual Insurance Company, which issued a motor vehicle policy to Jason.  The Rural policy has a $300,000 per-accident limit of liability, and it insures Jason, Wendy, and any family member for their use of "any auto."  The Foerster child was driving his aunt's vehicle with permission at the time of the collision, and this vehicle is not listed on the declarations page of the Rural policy.  The parties dispute whether it is "described" in the Rural policy and, if so, whether Rural's maximum liability is $300,000 or $900,000 based on the requirements of WIS. STAT. § 632.32(3) (2019-20).[2]  The circuit court determined that Rural's maximum liability is $300,000.

---

[1]  We refer to Jason and Wendy by their first names because they share a last name, and we refer to their son, who was the thirteen-year-old driver, as the "child" or the "Foerster child." There are several additional parties to the ongoing circuit court proceedings who share the Foerster surname, but we do not refer to any of those parties by name in this opinion.  When we reference the Foersters, we are referring collectively to Jason, Wendy, and the Foerster child.

[2]  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

The court then granted the motion Thom filed pursuant to WIS. STAT. § 628.46, which requested prejudgment interest dating back nearly eighteen months.

¶3    Thom appeals the circuit court's determination of Rural's maximum liability, and Rural cross-appeals the court's award of prejudgment interest. We affirm the order determining Rural's maximum liability to be $300,000, although we base our decision on a different rationale than that relied on by the circuit court. Specifically, we conclude that WIS. STAT. § 632.32(3)'s requirements do not supersede the policy's $300,000 limit of liability because the aunt's vehicle is not "a motor vehicle described in the [Rural] policy," as required by § 632.32(3). We also affirm the order requiring Rural to pay statutory prejudgment interest. At the pertinent time, the conditions necessary to trigger interest under WIS. STAT. § 628.46 were satisfied, and the court's finding that Rural lacked reasonable proof that it was not responsible for paying Thom's claim is not clearly erroneous.

## BACKGROUND

¶4    The facts material to this appeal are uncontested. On January 24, 2016, the Foerster child was helping his uncle do some work on the uncle's farm. His parents, Wendy and Jason, were not present. The child's uncle directed him to drive a Chevrolet Tahoe to his grandparents' house to retrieve a piece of equipment. The Chevy belonged to the child's aunt, and it was covered under a motor vehicle policy issued by 1st Auto & Casualty Insurance Company.

¶5    The Foerster child had to drive across a public highway to get to his grandparents' house. As he attempted to do so, his vehicle collided with Thom's vehicle. Thom sustained significant injuries as a result of the collision.

¶6      Thom commenced this tort action through her guardian ad litem in January 2017.  She amended her complaint several times, adding additional defendants and claims each time.  Ultimately, she brought the following claims: direct actions against Rural and 1st Auto for the Foerster child's negligent operation of the Chevy;[3] claims against the aunt and uncle alleging negligent entrustment of the Chevy; claims against Jason and Wendy as well as the aunt, uncle, and grandparents alleging negligent control and supervision of the Foerster child; and claims against the uncle and grandfather alleging that they violated Wisconsin's child labor laws.[4]  This appeal pertains to Thom's direct action against Rural and her claims against Jason and Wendy.

¶7      The parties dispute the maximum amount that Rural can be required to pay under the motor vehicle liability policy that it issued to Jason and Wendy.  We refer to this policy as the "Rural policy" throughout this opinion, and we discuss its terms in greater detail below.  For background purposes, it suffices to say that the Rural policy promises that Rural will pay damages that an "insured" becomes legally responsible to pay because of an auto accident, and it defines "insured" to mean, in pertinent part, Jason, Wendy, "or any 'family member' for the … use of any auto …."  It is undisputed that Jason, Wendy, and the Foerster child are all "insureds" under the Rural policy.  It is also undisputed that the Rural

_____

[3] *See* WIS. STAT. § 632.24 (allowing an injured person to file a direct action against the insurer of a potentially liable party).  In its answer to the complaint, Rural admitted the Foerster child's negligence.

[4] As stated above, 1st Auto provided a motor vehicle liability policy to the Foerster child's aunt and uncle that covered the Chevy that the child was driving, and it also provided a motor vehicle liability policy to the child's grandparents.  Thom's claims against the aunt were dismissed during the circuit court proceedings.  Thom's claims against the uncle, grandparents, and 1st Auto remain pending in the circuit court and are not at issue in this appeal.

policy's "limit of liability" provision expressly limits Rural's liability for "any one auto accident" to $300,000, no matter how many "insureds" are involved, and that there was only one "auto accident" at issue in this case.

¶8    The question in this case is whether the $300,000 per-accident limit of liability provision in the Rural policy is superseded by WIS. STAT. § 632.32(3), commonly referred to as the omnibus statute.[5]   More specifically, the parties dispute whether the omnibus statute requires Rural to provide three separate limits of liability, one for each insured, based on the interpretation given to the omnibus statute by Wisconsin courts.  As discussed in greater detail below, Wisconsin courts have interpreted the omnibus statute to increase an insurance company's liability beyond the limits stated in a policy when a "motor vehicle described in the policy" is involved in an accident in which more than one insured was "actively negligent." *Miller v. Amundson*, 117 Wis. 2d 425, 429-30, 345 N.W.2d 494 (Ct. App. 1984); *Iaquinta v. Allstate Ins. Co.*, 180 Wis. 2d 661, 666, 510 N.W.2d 715 (Ct. App. 1993); *see also Folkman v. Quamme,* 2003 WI 116, ¶¶63-65, 264 Wis. 2d 617, 665 N.W.2d 857.  The omnibus statute's requirements are imputed to every policy and supersede contrary policy terms, including policy language purporting to limit the insurer's per-accident liability to a fixed amount. *See LaCount v. General Cas. Co.*, 2006 WI 14, ¶12 n.8, 288 Wis. 2d 358, 709 N.W.2d 418; *see also Reuter v. Murphy*, 2000 WI App 276, ¶13, 240 Wis. 2d 110, 622 N.W.2d 464.

---

[5] Another provision in the same section, WIS. STAT. § 632.32(4), has also been referred to as the omnibus statute, *see Zarder v. Humana Insurance Co.*, 2009 WI App 34, ¶24, 316 Wis. 2d 573, 765 N.W.2d 839, *aff'd as modified and remanded*, 2010 WI 35, ¶24, 324 Wis. 2d 325, 782 N.W.2d 682, but we use this term to refer specifically to WIS. STAT. § 632.62(3).

¶9    Thom and Rural filed competing motions for declaratory judgment. Thom sought a declaration that, based on the omnibus statute's requirements, Rural's maximum liability is $900,000—one $300,000 limit for Jason, one for Wendy, and one for the Foerster child. Rural sought a declaration that the omnibus statute did not apply, and that, consistent with the policy language, Rural's maximum liability for this accident is $300,000. The circuit court determined that Rural's maximum liability is $300,000 and that Rural is not required to provide separate limits for each insured.[6]

¶10   Rural had previously tendered $300,000 in insurance proceeds in response to a demand letter that Thom sent in February 2019, several months before the circuit court's ruling. The parties disagreed about whether Rural was also required to pay statutory prejudgment interest under WIS. STAT. § 628.46. According to Thom, Rural should have promptly paid $300,000 for the Foerster child's undisputed liability after receiving Thom's discovery responses in July 2017. The discovery responses showed that Thom's injuries were catastrophic and permanent, and that her medical expenses exceeded $1,000,000 as of that date. Rural disagreed, arguing that the requirements of § 628.46 were not satisfied until Thom demanded a $300,000 payment from Rural in February 2019.

---

[6] Specifically, the court determined that the omnibus statute applied because the Chevy is "covered under the policy," but that Rural was not required to provide separate limits for each insured because Jason and Wendy were not "actively negligent."

At the same time the circuit court made these determinations, which are the subject of this appeal, the court also determined 1st Auto's maximum liability under two motor vehicle insurance policies. The aunt and uncle's policy provided a per-accident limit of liability of $250,000; the court determined that the Foerster child was also an insured under that policy, and it tripled the contractual limit of liability to provide a total of $750,000 in coverage. The court determined that the grandparents' policy provided a total of $500,000 in liability coverage.

¶11 Thom filed a motion requesting prejudgment interest, and the circuit court concluded that Thom was entitled to such interest under WIS. STAT. § 628.46(1) and *Kontowicz v. American Standard Insurance Co. of Wisconsin*, 2006 WI 48, ¶47, 290 Wis. 2d 302, 714 N.W.2d 105, *clarified on denial of reconsideration*, 2006 WI 90, ¶3, 293 Wis. 2d 262, 718 N.W.2d 111. The court's order was final as to Rural's interests in this case, and this appeal and cross-appeal followed while the proceedings relating to the other defendants remain pending in the circuit court. We discuss additional facts as needed below.

## DISCUSSION

¶12 Thom appeals the circuit court's determination that Rural's maximum liability is $300,000. Rural cross-appeals, challenging the court's determination that Thom was entitled to prejudgment interest. We discuss each issue in turn.

## I. Rural's Maximum Liability

¶13 We begin by addressing whether the omnibus statute requires Rural to provide separate $300,000 limits of liability for Jason, Wendy, and the Foerster child. This question was raised in competing motions for declaratory judgment. The parties' requests for declaratory relief present questions of law regarding the interpretation of insurance policies and statutory language. *Olson v. Farrar*, 2012 WI 3, ¶24, 338 Wis. 2d 215, 809 N.W.2d 1 (citations omitted) (explaining that a request for declaratory judgment that turns upon the interpretation of an insurance policy presents a question of law); *American Transmission Co. v. Dane Cnty.*, 2009 WI App 126, ¶8 n.5, 321 Wis. 2d 138, 772 N.W.2d 731 (providing that a request for declaratory judgment that turns upon the interpretation of a statute presents a question of law). We review these questions of law independent of the

7

circuit court's analysis. *Olson*, 338 Wis. 2d 215, ¶24; *Security Health Plan of Wisconsin, Inc. v. American Standard Ins. Co. of Wisconsin*, 2018 WI App 68, ¶18, 384 Wis. 2d 545, 920 N.W.2d 340.

¶14    As stated above, the parties agree that Jason, Wendy, and the Foerster child are all "insureds" under the Rural policy, and that Rural will pay damages that any of them must pay as a result of an insured's use of "any auto." Rural does not contest that this accident involved an insured's use of "any auto" and that it is liable for up to $300,000 in damages. However, on its face, the "limit of liability" provision in the policy expressly limits Rural's liability for "any one auto accident" to $300,000, no matter how many "insureds" were involved in the accident. More specifically, the policy states that it will pay up to $300,000 "for all damages for 'bodily injury' resulting from any one auto accident," and that this amount "is the most [Rural] will pay," regardless of the number of "[i]nsureds" or "[c]laims made[.]"    Accordingly, if the policy language controls, Rural's maximum liability related to this accident is $300,000. Thom does not dispute this interpretation of the policy language, but she argues that the omnibus statute overrides the policy's per-accident limit of liability and mandates separate $300,000 limits for each insured.

¶15    We first provide an overview of the omnibus statute and pertinent Wisconsin cases interpreting its requirements. We then address the parties' arguments about whether the omnibus statute supersedes the $300,000 per-accident limit of liability provision in the Rural policy.

## A.  Overview of the Omnibus Statute

¶16    The omnibus statute states that, with exceptions that do not apply here, every Wisconsin motor vehicle policy issued to an owner shall provide that:

(a) Coverage provided to the named insured applies in the same manner and under the same provisions to any person using any motor vehicle described in the policy when the use is for purposes and in the manner described in the policy.

(b) Coverage extends to any person legally responsible for the use of the motor vehicle.

WIS. STAT. § 632.32(3).

¶17 Stated plainly, under the omnibus statute, any person who is not a "named insured" but who uses or is legally responsible for the use of a motor vehicle described in a motor vehicle policy is covered "in the same manner and under the same provisions" as the named insured. WIS. STAT. § 632.32(3).[7]

---

[7] Thom discusses the statutory text of WIS. STAT. § 632.32(3)(a) for the first time in her reply brief. She acknowledges that omnibus coverage under § 632.32(3)(a) extends only to vehicles that are "described in the policy." However, she points out that § 632.32(3)(b) refers to "the motor vehicle" without specifying that the motor vehicle in question must be "described in the policy." Therefore, she asserts, omnibus coverage under par. (b) is not so limited, and it extends to vehicles that are not described in the policy.

We rejected this precise argument in *Mills v. Wisconsin Mutual Insurance Co.*, 145 Wis. 2d 472, 427 N.W.2d 397 (Ct. App. 1988), *overruled on other grounds by West Bend Mutual Insurance Co. v. Playman*, 171 Wis. 2d 37, 42-43, 489 N.W.2d 915 (1992). In *Mills*, we examined the legislative history of the omnibus statute and concluded that "'the motor vehicle' referred to in par. (b) … refers back to 'any motor vehicle described in the policy' in par. (a).'" *Id.* at 480. For this reason, we concluded that par. (b) does not extend omnibus coverage "to a vehicle not described in the automobile liability insurance policy." *Id.* at 482.

*Mills* was subsequently overruled on unrelated grounds. *See Playman*, 171 Wis. 2d at 42-43 (overruling *Mills*' interpretation of WIS. STAT. § 631.43, a statute concerning insurance policy stacking). As a result, *Mills* has no precedential value, and we are not bound to reject Thom's argument based on *Mills*. *See Blum v. 1st Auto & Cas. Ins. Co.*, 2010 WI 78, ¶56, 326 Wis. 2d 729, 786 N.W.2d 78 (stating when a court of appeals opinion is overruled by our supreme court, it retains no precedential value). Nevertheless, based on our review of the language and legislative history of WIS. STAT. § 632.32(3), we independently reach the conclusion that, as used in par. (b), "the motor vehicle" means "any motor vehicle described in the policy." Our confidence in the correctness of this interpretation is bolstered by our supreme court's repetition of this holding from *Mills* in an opinion that has not been overruled. *See Cardinal v. Leader Nat. Ins. Co.*, 166 Wis. 2d 375, 394, 480 N.W.2d 1 (1992) (quoting *Mills*, 145 Wis. 2d at 482, for the proposition that "the omnibus coverage statute does not extend

(continued)

9

Wisconsin cases sometimes refer to such additional insureds as "omnibus insureds." *See, e.g.*, **LaCount**, 288 Wis. 2d 358, ¶4 n.5; *see also* Arnold P. Anderson, WISCONSIN INSURANCE LAW, § 2.67 (8th ed. 2020). Omnibus coverage is imputed to every motor vehicle insurance policy, and the omnibus statute's requirements supersede contrary policy terms. *See **LaCount***, 288 Wis. 2d 358, ¶12 n.8; **Reuter**, 240 Wis. 2d 110, ¶13.

¶18    The purpose of the omnibus statute is to make sure that insurance coverage obtained for "'a vehicle listed in the policy'" also provides coverage "'for individuals'" who "'use it with permission and are responsible for using it.'" *Folkman*, 264 Wis. 2d 617, ¶61 (citation omitted). In other words, the omnibus statute requires that any person who uses a vehicle described in a policy is afforded "the same protection" under that policy "as is afforded to the named insured." *Carrell v. Wolken*, 173 Wis. 2d 426, 437, 496 N.W.2d 651 (Ct. App. 1992). Thus, it is sometimes said that the omnibus statute prohibits insurance companies "'from insuring only certain drivers,'" and that omnibus coverage "'follows the vehicle.'" *Folkman*, 264 Wis. 2d 617, ¶61 (citation omitted); *see also **Cardinal v. Leader Nat'l Ins. Co.***, 166 Wis. 2d 375, 389, 480 N.W.2d 1 (1992).

---

coverage to a vehicle not described in the automobile liability insurance policy"). It is also bolstered by our supreme court's subsequent approval of the proposition from *Mills* that "'the legislative history … does not reflect that the legislature … intended to 'sever' the connection between pars. (a) and (b) of § 632.32(3).'" *See **LaCount v. General Cas. Co.***, 2006 WI 14, ¶40 & n.21, 288 Wis. 2d 358, 709 N.W.2d 418 (quoting *Mills*, 145 Wis. 2d at 480). Accordingly, although *Mills* does not control, we reject Thom's unsupported assertion that § 632.32(3)(b) extends omnibus coverage to vehicles that are not described in the policy.

¶19    For the omnibus statute to apply, the motor vehicle involved in the accident must be "described in the policy," and its use must have been "for the purpose and in the manner described in the policy." WIS. STAT. § 632.32(3); *see also **Reuter***, 240 Wis. 2d 110, ¶15. The parties dispute whether the Chevy was "described in the [Rural] policy," and we address their arguments below. The parties do not dispute that the Foerster child used the Chevy "for the purposes and in the manner described in the policy," and we discuss this requirement no further.

¶20    Wisconsin courts have determined that, under certain circumstances, the omnibus statute requires an insurance company to extend separate limits of liability to each insured involved in an accident despite policy language to the contrary. In ***Miller***, 117 Wis. 2d 425, a child was injured when he fell out of the back of a pickup truck. ***Id.*** at 426-27. The child's grandmother was driving the pickup, and his mother, who was a passenger, had allowed the child to ride in back. ***Id.*** at 427. Both were found to be negligent. ***Id.*** The grandmother was named as an insured in the policy that covered the pickup, but the mother was not a named insured. ***Id.*** at 430. The policy contained a single liability limit of $100,000 per occurrence, and it expressly stated that that limit was the most that the insurer would pay regardless of the number of insureds. ***Id.*** at 429.

¶21    In ***Miller***, we concluded that the omnibus statute required the insurance company to extend separate $100,000 limits of liability to the mother and the grandmother, notwithstanding the contrary policy language. ***Id.*** at 430. We based this conclusion on the statutory language stating that an omnibus insured (such as the mother) must be covered "in the same manner and under the same provisions" as a named insured (such as the grandmother). ***Id.*** We stated that the grandmother should receive the $100,000 limit "she believed she was paying for and reasonably expected under the policy," and that the mother was

entitled to the "same coverage" under the omnibus statute. *Id.* Our reasoning was based on the principle that "omnibus coverage should not subtract from the named insured's coverage." *Id.* at 429-30.

¶22 The rule articulated in *Miller* was later limited to "cases where both the named insured and the additional insured are actively negligent." *Iaquinta*, 180 Wis. 2d at 666. By contrast, "where the negligence of the [omnibus] insured is merely imputed to the named insured, or where the named insured is vicariously liable, the holding of *Miller* is inapplicable, and the policy limits expressed in the policy are unaffected by the omnibus statute." *Id.* (emphasis omitted); *see also LaCount*, 288 Wis. 2d 358, ¶¶52-72 (discussing cases that distinguish between "active" and "imputed" negligence for the purposes of the omnibus statute).

¶23 With that background, there are two primary disputes between Thom and Rural regarding the application of the omnibus statute in this case. First, the parties dispute whether the omnibus statute applies at all, which turns on whether the Chevy at issue is "described" in the Rural policy. If it is, they also dispute whether Rural's limits of liability must be tripled on the grounds that Jason and Wendy were actively negligent.[8] We begin with the first question and, because its answer is dispositive, we do not address whether Jason and Wendy's alleged

---

[8] Rural appears to agree that, if the Chevy was described in the policy and Jason and Wendy were both actively negligent, then Rural must provide separate $300,000 liability limits for each of the three insureds. We do not take any position on whether the case law interpreting the omnibus statute requires this result. We note that, during the circuit court proceedings, Thom also argued that 1st Auto was required to extend separate limits of liability for each of its insureds, and 1st Auto argued that the omnibus statute did not require this result. Its brief to the circuit court included additional arguments about the reach of the omnibus statute that were not advanced by Rural. We take no position on any arguments that were advanced by 1st Auto but not by Rural during the circuit court proceedings.

negligence is properly characterized as active or imputed. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

### B. Vehicles "Described" in the Rural Policy

¶24 As stated above, the omnibus statute extends the "coverage provided to the named insured" to "any person using any motor vehicle described in the policy," WIS. STAT. § 632.32(3)(a), and to "any person legally responsible for the use" of the motor vehicle described in the policy, § 632.32(3)(b). In this case, the parties dispute whether the Chevy that the Foerster child was driving is "described" in the Rural policy. Thom's argument that the vehicle is "described" in the policy is based on its definition of an "insured," which provides that Jason and Wendy's "family member" will be insured for their use of "any auto."

¶25 Although the parties disputed this issue in the circuit court, Thom does not discuss this issue in her opening appellate brief, and we could decline to address her arguments on that basis alone. *A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998) (stating that we generally do not address arguments developed in a reply brief). We nevertheless choose to take up the parties' arguments here because it provides an opportunity to clarify a nuanced area of law. As we now discuss, Wisconsin cases have determined that a vehicle is "described in a policy" if it is listed on the insurance application or on the policy's declarations page, *see Cardinal*, 166 Wis. 2d at 383-84, 393 n.15, 480 N.W.2d 1 (1992), or if it is otherwise "covered" under the policy, *see Kettner v. Wausau Insurance Co.*, 191 Wis. 2d 723, 530 N.W.2d 399 (Ct. App. 1995) and *Reuter*, 240 Wis. 2d 110.

¶26    In *Cardinal*, 166 Wis. 2d 375, the insurance company issued a "non-owner" policy which insured Wilson "for the use of any automobile." *Id.* at 384-85 & n.6. The policy's "CARS WE INSURE" section stated that the policy insured "any car described on the declaration page," but no vehicles were listed on the declaration page. *Id.* at 382-83 & n.4. Wilson did happen to own a car, *id.* at 384-85, and when he allowed a friend to drive it, the permissive driver caused a collision. *Id.* at 380.

¶27    One question presented in *Cardinal* was whether, under the omnibus statute, the coverage provided to Wilson would extend to the permissive driver of his car. *Id.* at 392. Our supreme court contrasted omnibus coverage, which "follows the vehicle," with the policy coverage provided to Wilson "for the use of any automobile." *Id.* at 389 (quoting *Gross v. Joecks*, 72 Wis. 2d 583, 590, 241 N.W.2d 727 (1976)). The court explained that, when a policy covers an insured for the use of "any automobile," that coverage "follows the driver." *Id.* at 389. Although the omnibus statute would mandate coverage for the permissive driver if she were using a vehicle described in the policy, "a reasonable person" reviewing the policy "would believe that no vehicles were insured" because no vehicles were listed on the declarations page. *Id.* at 383. Therefore, the permissive driver of Wilson's car was not entitled to omnibus coverage. *Id.* at 394.

¶28    A second case that considered the reach of the omnibus statute is *Kettner*, 191 Wis. 2d 723, which we decided three years after *Cardinal*. In *Kettner*, Conradt owned a school bus and drove it under contract with a school district. *Id.* Conradt was driving his bus when it collided with a motorcycle. *Id.* at 730. The question on appeal was whether, based on the omnibus statute, the district's policy was required to pay the damages for which Conradt was liable as a result of the crash. *Id.* at 729-30.

¶29     Notably, the school district's policy in *Kettner* did not list Conradt's bus on the declarations page. *Id.* at 742. However, it appears to have been undisputed that the policy covered "non-owned" vehicles that the district "hired or borrowed." *Id.* at 730. The insurer argued that the coverage for such vehicles was subject to an exclusion based on the policy's definition of "insured"—specifically, that the policy did not insure "[t]he owner … from whom you hire or borrow a covered 'auto.'" *Id.* at 740. We determined that, provided that Conradt's bus was a "covered" vehicle, this ownership-based exclusion would violate the omnibus statute and could not be enforced. *Id.* at 741-42. In reaching this conclusion, we stated that the omnibus statute "applies only to vehicles covered under the insured's policy," and that "the [omnibus] statute is applicable … if Conradt's bus was covered under [the district's] policy." *Id.* at 742.[9]

¶30     We pause to acknowledge apparent daylight between the discussion of the reach of the omnibus statute in *Cardinal* and in *Kettner*. *Cardinal*'s analysis turned on whether there was an actual *description* of the vehicle, either on the declarations page or in the insurance application. *Kettner* and its progeny do not require any such description, and instead, they ask whether the vehicle is *covered* by the policy. Because Thom does not prevail under the rationale set forth in either case, we need not and do not examine the extent to which *Kettner* may or may not conflict with our supreme court's reasoning in *Cardinal*.

---

[9] This court has taken a similar analytical approach in subsequent cases. *See Reuter v. Murphy*, 2000 WI App 276, 240 Wis. 2d 110, 622 N.W.2d 464; *Mittnacht v. St. Paul Fire & Cas. Ins. Co.*, 2009 WI App 51, ¶¶8 & n.4, 14-17, 316 Wis. 2d 787, 767 N.W.2d 301 (looking to a section of the policy entitled "Which Autos Are Covered" to determine whether a vehicle was "described in the policy" for the purposes of extending coverage under the omnibus clause).

¶31 Turning to the Rural policy at issue here, it is undisputed that the Foerster child's aunt's Chevy is not listed in the insurance application or the declarations page of the Rural policy. *See Cardinal*, 166 Wis. 2d at 383. Therefore, the only other option for satisfying the "described in the policy" requirement is if the Chevy is otherwise "covered" under the Rural policy. *See Kettner*, 191 Wis. 2d at 742. For the following reasons, we conclude that it is not.

¶32 The Rural policy specifies which vehicles are "covered" under the policy. It defines "your covered auto" to mean:

> 1. Any vehicle shown in the Declarations.
>
> 2. Any "newly acquired auto."
>
> 3. Any "trailer" you own.
>
> 4. Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its [breakdown, repair, servicing, loss or destruction].

¶33 Thom does not argue that the Chevy fits within the policy's definition of "your covered auto," and no such argument could reasonably be made. The policy's declarations page lists two vehicles as "covered autos," one assigned to Jason and the other to Wendy. Not surprisingly, neither of these autos is the aunt's Chevy. Nor is the Chevy a newly acquired auto, a trailer, or an auto that a named insured was using as a temporary substitute for another covered auto.

¶34 Instead, as stated above, Thom argues that the Chevy is "covered" in the Rural policy through the policy's definition of the term "insured." As used in the pertinent section of the policy, an "insured" means:

> 1. [Jason or Wendy] or *any "family member" for the* ownership, maintenance or *use of any auto* or "trailer".
>
> 2. Any person using "your covered auto."

16

3. For "your covered auto," any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded ….

4. For any auto or "trailer," other than "your covered auto", any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded ….

(Emphasis added.)

¶35 Thom focuses on the first sentence of this definition. It is undisputed that the Foerster child is a "family member," as the Rural policy defines that term. Thom argues that, because the Foerster child is insured for the use of "any auto," it follows that any vehicle he drives is "covered" by the policy.

¶36 When we interpret insurance policy language, we do so "according to its plain and ordinary meaning as would be understood by a reasonable insured." *Venerable v. Adams*, 2009 WI App 76, ¶8, 318 Wis. 2d 784, 767 N.W.2d 386. Here, no reasonable insured would interpret the Rural policy's definition of "insured" to mean that the Chevy is a "covered" vehicle. The definition makes a distinction between "your covered auto" and "any auto," and a reasonable insured would understand this distinction to mean that the policy insures some people even when they are not driving a "covered" vehicle. Turning to the policy language providing that Rural will insure a family member for their "use of any auto," a reasonable insured would understand this provision to mean that Rural will pay liability incurred by family members, no matter what vehicles they drive. In other words, Rural cannot deny coverage to a family member on the ground that the family member was driving a vehicle that was *not* "your covered auto." No reasonable insured would read this definition to mean that the Foerster child's aunt's Chevy was itself "covered" under the Rural policy.

¶37    Thom's argument to the contrary is based on the premise that, if a policy insures a *person* for the use of any vehicle, then any *vehicle* that person uses is a "covered" vehicle. Thom's argument would logically extend to any other vehicle used by Jason, Wendy, or any family member. If Thom is correct, any person legally responsible for the use of any such vehicle would also be entitled to omnibus coverage under the statute. Thom argues that Wisconsin precedent and the underlying purpose of the omnibus statute support this premise, but we are not persuaded.

¶38    Thom's argument conflicts with our supreme court's reasoning in **Cardinal**, 166 Wis. 2d 375. The "any auto" language that Thom relies on in the Rural policy is nearly identical to the policy language at issue in **Cardinal**—both provide that an insured is covered for the use of "any" automobile. The **Cardinal** court stated that this language provides "insurance on the person," not on any vehicle. **Id.** at 388. Likewise, here, the "any auto" language in the Rural policy guarantees that the Foerster child, as an insured *person*, will be insured when driving "any auto." It does not mean that any *vehicles* he drives are "described in the policy."

¶39    Nor does Thom's argument find support in **Kettner**. Contrary to Thom's assertion, the **Kettner** court did not decide that vehicles were "covered" based on the definition of who is an insured under the policy. Indeed, in **Kettner**, the driver in question was expressly *excluded* as an insured. **Id.** at 730. As explained above, the omnibus statute applied in that case because the school district's policy "covered non-owned vehicles it hired or borrowed." **Id.** Here, by

18

contrast, we have determined that no reasonable insured reading the Rural policy would conclude that it "covered" the Chevy in question.[10]

¶40     We also reject Thom's argument based on the purpose of the omnibus statute. To be sure, we have on occasion stated broadly that the omnibus statute's purpose is to "assure insurance coverage to accident victims." *Kettner*, 191 Wis. 2d at 742. But our supreme court has explained that the specific way in which the statute does so is "'to make sure when a policy insures a vehicle listed in the policy, the policy follows the vehicle to provide coverage for individuals [who] use it with permission and are responsible for using it.'" *Folkman*, 264 Wis. 2d 617, ¶61 (citation omitted). Here, that purpose has already been served. As stated, the Foerster child's aunt owned the Chevy he was driving, and her motor vehicle policy from 1st Auto listed that Chevy as a "covered auto." The Foerster child was not a named insured in the aunt's policy, but 1st Auto did not contest that he was covered under the aunt's policy, thereby expanding the coverage available to pay for Thom's injuries.[11]

¶41     Thom now asks us to conclude that the omnibus statute does more—that it triples the contractual limits of liability, even though the Rural policy does

---

[10] Thom's reply brief focuses on *Reuter*, but that case adds little to what we said in *Kettner*. In *Reuter*, as in *Kettner*, the vehicle at issue was a "hired vehicle," and we expressed no doubt that it was "covered" by the school district's policy. *Reuter*, 240 Wis. 2d 110, ¶¶15-16. Thom's reply brief also cites *Nelson v. Ohio Casualty Insurance Co.*, 29 Wis. 2d 315, 139 N.W.2d 33 (1966), but in *Nelson*, it was likewise undisputed that the vehicle in question was "covered" under the policy. *See id.* at 317 (explaining that the insurance company "had issued an automobile liability policy to the city covering the truck involved").

[11] As stated above, the circuit court also determined that the omnibus statute acted to provide separate liability limits for the two named insureds on the 1st Auto policy, ultimately tripling coverage, over 1st Auto's objection. That determination is not before us in this appeal.

not "describe" the Chevy under any reasonable understanding of the word "describe." We recognize our obligation to interpret the omnibus statute "broadly so as to increase rather than to limit coverage." *See **Home Ins. Co. v. Phillips***, 175 Wis. 2d 104, 111, 499 N.W.2d 193 (Ct. App. 1993). Yet, we are not permitted to stretch the statute's application beyond its language, its purpose, and the case law interpreting it. *See **LaCount***, 288 Wis. 2d 358, ¶82 (stating that, although the omnibus statute is generally intended to expand coverage, this purpose does not "require or permit" the court to interpret it in a manner "contrary to its text and its statutory and legislative history and prior case law").

¶42 If Thom's interpretation prevailed, omnibus coverage would not only follow the *vehicle*, but it could also follow the *driver* and act to multiply an insurer's liability in a way that goes far beyond the text and purpose of the omnibus statute and the case law interpreting it. There is no indication whatsoever in the text of the statute that the legislature intended that result, nor is it part of the risk that would be contemplated by an insurer knowledgeable about the omnibus statute's requirements when issuing a Wisconsin policy for an insured's use of "any" vehicle.

¶43 As discussed above, Rural undisputedly promised to pay damages for which Jason, Wendy, and the Foerster child are legally responsible as a result of an accident involving their use of any auto up to the $300,000 per-accident limit of liability. Because we conclude that the Chevy at issue is not a "motor vehicle described in the policy," the omnibus statute does not apply and cannot be used to override this limit. Therefore, although we reach this conclusion for a different reason than the circuit court, the circuit court correctly determined that Rural's maximum liability under the policy is $300,000.

20

## II. Thom's Claim for Prejudgment Interest

¶44 We now turn to Rural's cross-appeal, which challenges the circuit court's determination that Thom is entitled to prejudgment interest. Thom's claim for prejudgment interest is based on WIS. STAT. § 628.46(1), which addresses the circumstances under which an insurance company must pay a claim and imposes interest if insurers do not timely pay such claims.[12] The statute's purpose "is to discourage insurance companies from creating unnecessary delays in paying claims owed" and to "compensate claimants for the value of the use of their money." *Kontowicz*, 290 Wis. 2d 302, ¶47. As stated above, the court determined that Rural should have tendered $300,000 for the Foerster child's liability shortly after Thom commenced this litigation, following Rural's receipt of a discovery response itemizing Thom's medical expenses to date.

¶45 In *Kontowicz*, our supreme court set forth a three-part test applicable in cases where, as here, a person pursues a third-party claim against the insurance company.[13] *Id.*, ¶¶2, 48. *Kontowicz* concluded that under such circumstances, three "conditions to trigger interest" must be satisfied: (1) there must be "no

---

[12] WISCONSIN STAT. § 628.46 is entitled "Timely Payment of Claims." Under § 628.46(1), "[a] claim shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of the loss," but a payment "shall not be deemed overdue when the insurer has reasonable proof to establish that the insurer is not responsible for the payment, notwithstanding that written notice has been furnished to the insurer." This statute was amended in 2017 to change the statutory interest rate. 2017 Wis. Act 235, § 4. Neither party argues that the court applied an incorrect rate, and we discuss the effect of this amendment no further.

[13] Generally speaking, a third-party claimant is one who claims entitlement to insurance proceeds from an insurance company that issued a policy to another person who is allegedly responsible for the claimant's damages. *See generally* **Thom v. OneBeacon Ins. Co.**, 2007 WI App 123, ¶18, 300 Wis. 2d 607, 731 N.W.2d 657.

question of liability on the part of the insured," (2) the amount of damages must be "in a sum certain amount," and (3) the claimant must have provided "written notice of both liability and the sum certain amount owed." *Id.*, ¶48. Additionally, even if these conditions are satisfied, an insurer will not be liable for statutory interest if the insurer has "'reasonable proof'" that it is not responsible for paying the claim. *Id.* (quoting WIS. STAT. § 628.46).

¶46 The parties agree that the first *Kontowicz* condition was satisfied shortly after this litigation was commenced because Rural admitted the Foerster child's liability for Thom's injuries. Rural concedes that, as of the receipt of Thom's discovery responses in July 2017, the second *Kontowicz* condition was satisfied because Rural was provided with a sum certain of damages.

¶47 The dispute between the parties focuses on the third *Kontowicz* condition—written notice of liability and the sum certain amount owed by Rural— and when it was satisfied. Thom argues that this condition was satisfied when Rural received the discovery response, which itemized the medical expenses Thom had already incurred as of July 2017 and provided evidence of her catastrophic and permanent injuries. Rural argues that the third condition was not satisfied until more than eighteen months later, in February 2019, when Thom sent Rural a written demand for $300,000. The parties also dispute whether, prior to February 2019, Rural had "reasonable proof" that it was not responsible for a $300,000 payment. Before resolving these disputes, we first present additional facts and a chronology of pertinent events.

### A. Additional Background

¶48 The collision occurred in January 2016, and Thom commenced this litigation in January 2017. There were three defendants named in the original

complaint: the Foerster child's aunt; 1st Auto (for the aunt's negligence and the negligence of the Foerster child); and Rural (for the Foerster child's negligence).

¶49 Thom's original complaint (which was not amended until October 2017) did not specify any particular damages amount that Rural should pay; it instead demanded "judgment against the defendants for the amount of damages found to be appropriate, together with the costs, disbursements and prejudgment interest." The original complaint demanded that 1st Auto "provide coverage up to the stated limits in its policy of insurance" to the Foerster child and his aunt. It contained no similar language demanding coverage or policy limits from Rural.

¶50 Rural admitted that the Foerster child was an insured under the Rural policy, and that he was negligent. Rural took the position that the 1st Auto policy provided primary coverage, and that the Rural policy provided excess coverage. Rural relied on the "other insurance" clause in the Rural policy, which stated that "any insurance" Rural provides "for a vehicle" not owned by the named insured "shall be excess over any other collectible insurance."

¶51 The attorneys representing Rural and Thom discussed settlement as early as April 2017, however, they did not reach any settlement agreement.[14]

¶52 On July 6, 2017, Thom provided written responses to Rural's first set of interrogatories and requests for production. Rural's interrogatories asked

---

[14] According to Rural, Thom's attorney was unwilling to settle because he was "still trying to ascertain liable parties" and "needed to develop the facts before he would be comfortable releasing any parties." Rural contends that there was no "discussion of or demand" for a $300,000 payment during these settlement negotiations. Thom counters that Rural's attorney did not offer, and Thom's attorney did not refuse, payment of Rural's $300,000 policy limits.

23

Thom to, among other things, "[i]temize by health care provider the medical bills for which you are making claim herein and provide the total amount of all of the medical bills for which you are making claim herein to date." Thom provided an "attached itemization of medical specials gathered to date." The attached itemization is a one-page document that itemized her "Total Medical Bills" as $1,046,894 and indicated that the total was growing. This discovery response is the written notice that, according to Thom, satisfied *Kontowicz*'s third condition and triggered WIS. STAT. § 628.46's thirty-day deadline to pay.

¶53 When Thom filed her first amended complaint in October 2017, she added new claims against additional defendants. Several amended complaints followed and, by the time Thom had filed her fourth amended complaint, Jason, Wendy, the Foerster child's uncle, and his grandparents were all defendants. The parties' competing declaratory judgment motions regarding Rural and 1st Auto's limits of liability were filed in May 2018.

¶54 On February 19, 2019, Thom sent a letter informing Rural that her medical bills now exceeded $2,000,000 and demanding a $300,000 payment from Rural based on the Foerster child's undisputed liability. The letter also explicitly cited WIS. STAT. § 628.46 and requested statutory interest dating back to Rural's receipt of the July 2017 discovery response. This is the written notice that, according to Rural, satisfied *Kontowicz*'s third condition and triggered the thirty-day deadline to pay.

¶55 Rural tendered payment of $300,000 to Thom within thirty days of receipt of the February 2019 letter. At that time, the parties' competing motions regarding Rural and 1st Auto's limits of liability were still pending before the

circuit court, and the court would not decide these issues until several months later.

¶56     After the circuit court determined that Rural's maximum liability is $300,000, Thom moved for prejudgment interest on that amount. The circuit court granted Thom's motion, concluding that Rural should have paid its $300,000 policy limit within thirty days of receiving the July 2017 discovery response. Rural argues that the circuit court erred because the third *Kontowicz* condition was not satisfied before February 2019, and because Rural had "reasonable proof" that it did not owe $300,000. We address each argument in turn.

## B.  The Third *Kontowicz* Condition

¶57     As stated above, the third condition imposed under *Kontowicz* is that the claimant must provide written notice of liability and the sum certain amount owed.   *Kontowicz*, 290 Wis. 2d 302, ¶2.   When the underlying facts are undisputed, as they are here, whether the third condition is satisfied is a question of law subject to de novo review. *See Casper v. American Int'l S. Ins. Co*., 2017 WI App 36, ¶15, 376 Wis. 2d 381, 897 N.W.2d 429.

¶58     Rural contends that the itemization of damages that Thom included in her discovery response fails to satisfy the third *Kontowicz* condition because there was no accompanying demand that Rural pay its policy limits of $300,000. This argument is contrary to our supreme court's decision in *Kontowicz*.  In that case, Kontowicz was a third-party claimant, and, in January 2001, she provided the insurance company with a copy of itemized medical bills totaling $238,379.53. *Kontowicz*, 290 Wis. 2d 302, ¶5.  Then, six months later, Kontowicz demanded payment of the entire $500,000 policy limits, together with statutory interest.  *Id.*, ¶7.  Based on the facts set forth in the *Kontowicz* opinion, it does not appear that

25

any demand letter accompanied the January 2001 itemization; the court nevertheless determined that "as of January 8, 2001 … the statutory 30-day period after which interest would accrue began running on $238,379.53 of Kontowicz's claim." *Id.*, ¶53.[15] Applying that same reasoning here, the lack of a demand letter accompanying the July 2017 discovery response did not render it insufficient as a matter of law to satisfy the third *Kontowicz* condition.

¶59 In its reply brief on appeal, Rural shifts its focus and attempts to develop an additional argument about the third *Kontowicz* condition. It contends that the written notice requirement was not satisfied in July 2017 because the itemization Thom produced in discovery "gave absolutely no written notice to either insurer that any amount was expressly owed under any of the applicable insurance policies." We understand Rural to now be arguing that the written notice of a sum certain required by *Kontowicz* must specifically identify the amount of damages that Rural owed, separate and apart from the damages that were owed by 1st Auto or any other defendant.

¶60 Rural's reply brief raises nuanced arguments about the required contents of a written notice in a case like this, in which there are multiple defendants and insurance policies, and the insurance company in question provides excess coverage.[16] However, we do not address these arguments because

---

[15] The *Kontowicz* court also concluded that the insurer was required to tender the remainder of its policy limits within thirty days of Kontowicz's July 2001 demand letter. This decision is not pertinent to our analysis of the present case.

[16] This court addressed related but not identical issues regarding an excess insurer in *Estate of Payette v. Marx*, 2020 WI App 2, 390 Wis. 2d 356, 938 N.W.2d 628. Rural cites this case in its opening brief for the proposition that its responsibility for payment was "fairly debatable," an argument that we address below.

Rural did not present any developed argument about this issue to the circuit court and then did not develop the argument on appeal until its reply brief. *See State v. Ndina*, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612 (describing the policy reasons underlying the forfeiture rule); *A.O. Smith Corp.*, 222 Wis. 2d at 492 (stating that we generally do not address arguments developed in a reply brief).

¶61     To the extent that Rural argued in the circuit court that the amount it owed was uncertain due to the excess nature of its coverage, Rural framed this argument as one about "reasonable proof," not as an argument about the legal requirements for satisfying the third *Kontowicz* condition.  Rural took the same position in its opening appellate brief.  Any such argument about the third *Kontowicz* condition was undeveloped and conclusory.  *State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (courts generally do not address undeveloped arguments).  Rural did not frame its argument with any clarity as one about the third *Kontowicz* condition until its reply brief on appeal, depriving Thom of a meaningful opportunity to respond.  *See A.O. Smith Corp.*, 222 Wis. 2d at 492 ("It is inherently unfair for an appellant to withhold an argument from its main brief and argue it in its reply brief because such conduct would prevent any response from the opposing party.").

¶62     Accordingly, for these reasons, we conclude that Rural has not shown that the circuit court erred when it concluded that the July 2017 discovery response satisfied *Kontowicz*'s three conditions, including the condition that Thom provide "written notice of liability and the sum certain amount owed."

## C.  Reasonable Proof

¶63     We now turn to Rural's argument that, prior to February 2019, it had "reasonable proof" that it was not responsible for any portion of the medical

expenses disclosed in Thom's discovery responses. *See* WIS. STAT. § 628.46(1) (providing that payment is not overdue if "the insurer has reasonable proof to establish that [it] is not responsible for the payment, notwithstanding that written notice has been furnished"). As explained in ***Kontowicz***, our cases generally equate reasonable proof of non-responsibility with whether the resolution of a coverage issue is "fairly debatable." ***Kontowicz***, 290 Wis. 2d 302, ¶48. Although the application of § 628.46(1) to undisputed facts is generally reviewed de novo, Rural acknowledges that the circuit court's "reasonable proof" determination is a question of fact that is to be reversed only if it is clearly erroneous. ***Dilger v. Metropolitan Prop. & Cas. Ins. Co.***, 2015 WI App 54, ¶12, 364 Wis. 2d 410, 868 N.W.2d 177.

¶64 Rural's "reasonable proof" argument is founded on the clause in the Rural policy providing that coverage "shall be excess over any other collectible insurance." Rural argues that, when it received the discovery response in July 2017, the number of potentially responsible defendants and insurance policies was unknown and, therefore, "the amount of primary insurance coverage was undetermined and fairly debatable" at that time. Accordingly, even though Rural knew that Thom's medical expenses alone exceeded $1,000,000—an amount well over the apparent limit of liability that 1st Auto would pay for the Foerster child's liability under his aunt's policy—it was fairly debatable whether other policies might provide primary coverage. Rural also argues that Thom's potential claims against the Foerster child's uncle and grandparents contributed to the uncertainty, especially since Thom eventually sought to multiply the limits available under all applicable policies based on the omnibus statute. According to Rural, resolving uncertainty about the other available insurance was a "condition precedent to Rural's assessment of [its] responsibility for payment."

¶65   Here, as in ***Dilger***, our analysis and decision are driven by the applicable standard of review. *See **Dilger***, 364 Wis. 2d 410, ¶¶3, 15. Rural raises viable arguments about the potential uncertainty created by the multiple potential defendants and its excess insurance clause. These arguments might have persuaded the circuit court that Rural's responsibility to pay at least $300,000 was fairly debatable in July 2017. Yet, the court considered and rejected these arguments, explaining as follows:

> As to Rural's contention, the potential joinder of other family member defendants does not change the fact that [Rural] was on notice of [the Foerster child's] negligence, and that as the driver, [the child] would likely be attributed the greatest portion of causal negligence. Given the several million dollars of damages, it is incredible to assert that [Rural's $300,000 limit of liability] would not be paid.

We interpret this explanation as a finding that, under these facts and based on the information available to Rural in July 2017, Rural's responsibility for at least $300,000 was not fairly debatable because it was inevitable that Rural would have to pay at least that amount. Rural fails to point to any portion of this finding that was inaccurate or purely speculative, or to any apparent fallacy in its reasoning. Rural acknowledges that we are to review this decision for clear error, and on this record, we cannot say that the court's decision is clearly erroneous.[17]

---

[17] Rural also argues that Thom "waived" her claim for statutory interest by failing to cite WIS. STAT. § 628.46 in any of her complaints or correspondence predating her February 2019 demand letter. We reject this argument because Thom expressly sought "prejudgment interest" in her complaint and, as the circuit court determined, § 628.46 is the "only … pre-judgment interest statute related to insurance payments." Therefore, the court determined that Rural was on notice of Thom's claim for interest, and Rural does not persuade us that this determination was mistaken.

29

¶66    Accordingly, for all these reasons, we reject Rural's argument that the circuit court erroneously ordered it to pay statutory prejudgment interest.

## CONCLUSION

¶67    In sum, we affirm the circuit court's determination of Rural's maximum liability, and we likewise affirm the court's determination that Thom was entitled to statutory interest.

        *By the Court.*—Order affirmed.